(Nos. 47596, 47861, 48317 cons.—

WILLIAM LAFFOON, Appellant, v. BELL & ZOLLER COAL COMPANY, Appellee.—GEORGE E. HOOVER, Appellant, v. STEPHENSON ROOFING & SHEET METAL COMPANY *et al.*—(Stephenson Roofing & Sheet Metal Company, Appellee).—ANGELO NUTINI, Appellant, v. FIRST NATIONAL BANK AND TRUST COMPANY OF BARRINGTON *et al.*—(S. H. Freund & Sons, Inc., *et al.*, Appellees.)

*Opinion filed Dec. 3, 1976.—Rehearing denied Jan. 28, 1977.*

RYAN and CREBS, JJ., dissenting.

Harris and Lambert, of Marion, for appellant.

John E. Jacobsen and Terry Black, of Mt. Vernon, for appellee.

C. E. Heiligenstein, of Belleville (William J. Harte, Ltd. and Philip J. Rock, of Chicago, for appellant.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Bernard H. Bertrand, of counsel), for appellee.

Frank J. Wiedner and William J. Harte, Ltd., of Chicago (Philip Rock and John Gervasi, of counsel), for appellant.

Jerome N. Groark, Terence E. Flynn, and Rooks, Pitts, Fullagar and Poust, of Chicago (John G. Poust and Douglas F. Stevenson, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

These consolidated appeals present two common issues: first, whether the exclusive-remedy provision of section 5(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a)) was intended to bar an action under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*) by an injured workman against a general contractor who "is liable to pay compensation" to that workman under section 1(a)(3) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(a)(3)); and second, assuming it was intended to bar such an action, does section 5(a) violate the employee's right to due process and equal protection of the law.

Section 5(a) of the Workmen's Compensation Act provides, in pertinent part:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a).)

Section 1(a)(3) of the Act states:

> "Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor

unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation ***.

In the event any such person pays compensation under this subsection he may recover the amount thereof from the contractor or sub-contractor, if any, and in the event the contractor pays compensation under this subsection he may recover the amount thereof from the sub-contractor, if any.

This subsection does not apply in any case where the accident occurs elsewhere than on, in or about the immediate premises on which the principal has contracted that the work be done." Ill. Rev. Stat. 1975, ch. 48, par. 138.1(a)(3).

In cause No. 47596, plaintiff, William Laffoon, was an employee of Refieuna Salvage Company (hereinafter Refieuna) and was injured while dismantling a building located on mining properties owned by the defendant, Bell & Zoller Coal Company (hereinafter Bell & Zoller). Refieuna had contracted with Bell & Zoller to dismantle this building. Laffoon filed a claim for workmen's compensation with the Industrial Commission against Refieuna, which carried no compensation insurance. Applying section 1(a)(3), Bell & Zoller paid compensation benefits of $9,218.19 to Laffoon. Subsequently, Laffoon filed an action for damages against Bell & Zoller under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*). The defendant moved for a summary judgment, maintaining that it was compelled to and did, in fact, pay plaintiff compensation benefits in accordance with section 1(a)(3) of the Workmen's Compensation Act, and that, accordingly, it was an "employer" immune from such suit under section 5(a) of the Act. The circuit court of Franklin County granted the motion for a summary judgment. On appeal to the appellate court, the judgment was affirmed, with one justice dissenting. (*Laffoon v. Bell & Zoller Coal Co.,* 27 Ill. App. 3d 472.) That court held

that section 5(a) indicated a legislative intent to bar a subsequent action under the Structural Work Act, particularly after the employee had accepted the benefits of the Workmen's Compensation Act. We granted plaintiff leave to appeal.

In cause No. 47861, plaintiff, George E. Hoover, was employed by Seal-Tite Roofing Inc., a subcontractor of the general contractor, Stephenson Roofing & Sheet Metal Company (hereinafter Stephenson). Hoover was severely injured when he fell from the roof of a building on which he was working. He filed a claim for compensation, naming as the respondents Stephenson as well as his own employer. Pursuant to this claim Stephenson undertook to pay compensation benefits in accordance with section 1(a)(3) of the Workmen's Compensation Act. Thereafter, plaintiff initiated a suit under the Structural Work Act against Stephenson and certain other defendants, who are unrelated to the present appeal. Stephenson moved to dismiss the complaint against itself on the grounds that plaintiff was restricted to the exclusive remedy of the Workmen's Compensation Act. The circuit court of St. Clair County granted defendant's motion to dismiss, and this court allowed plaintiff's application for a direct appeal under Supreme Court Rule 302(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 302(b)).

In cause No. 48317, Angelo Nutini was an employee of Joseph Turuc, a plastering contractor who subcontracted with S. H. Freund & Sons (hereinafter Freund), a general contractor. Nutini sustained paralyzing injuries when a scaffold on which he was standing collapsed. He filed a claim for compensation against Turuc and received an award for the permanent loss of use of both legs. Turuc, however, had no workmen's compensation insurance, and Nutini subsequently amended his claim to join Freund as a respondent under section 1(a)(3). An order was then entered holding Freund liable to pay the benefits awarded against Turuc. Nutini later filed an action against Freund

and the owner of the building, alleging violations of the Structural Work Act. As did Stephenson in cause No. 47861, Freund moved to dismiss the complaint as to itself. Relying on the appellate court decision in *Bell & Zoller*, the circuit court of Cook County granted the motion. We allowed plaintiff's direct appeal pursuant to Supreme Court Rule 302(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 302(b)), and consolidated it with the two preceding causes.

The defendants maintain, basically, that section 5(a) of the Workmen's Compensation Act provides them with immunity from an action for damages by an employee of an uninsured subcontractor when they are required to pay compensation benefits to that employee under section 1(a)(3) of the Act. The plaintiffs respond that section 5(a) was intended to provide immunity only to the employer of that employee, and alternatively, if the defendants' interpretation of section 5(a) is correct, that interpretation is violative of their rights to due process and equal protection.

The resolution of these conflicting positions may be reached by concentrating on the latter portion of plaintiffs' argument. The rationale behind that argument can readily be illustrated by an example proffered by one of the plaintiffs. Two men are working on a beam which suddenly collapses injuring both men. The first man is an employee of a subcontractor who has workmen's compensation insurance. This man will receive compensation benefits from his employer and may subsequently sue the general contractor—or the person "engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of [the Workmen's Compensation] Act" (hereinafter included under the term general contractor)—who, he maintains, is tortiously liable for his injuries. The second man is an employee of a subcontractor who carries no compensation insurance and has not "guaranteed his liability to pay such compensation." Under section 1(a)(3)

of the Act, this man will receive compensation benefits from the general contractor. He will be precluded, however, under defendants' interpretation of section 5(a) from maintaining a suit for damages against the general contractor even though he is liable for the employee's injuries. Moreover, the general contractor who pays benefits to the injured employee is permitted by section 1(a)(3) to recover from the subcontractor the amount paid, and, thus, may suffer no monetary loss. Plaintiffs contend that a construction of section 5(a) which allows the result illustrated creates an arbitrary and impermissible classification among injured employees.

"For these classifications to be deemed constitutional, as in all cases involving classifications, it must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a rational relation to the evil to be remedied and the purpose to be attained by the statute, otherwise the classification will be deemed arbitrary and in violation of the constitutional guarantees of due process and equal protection of the laws." (*Grasse v. Dealer's Transport Co.,* 412 Ill. 179, 193-94.) This court has held that the underlying purpose of the Workmen's Compensation Act is to provide financial protection to employees whose earning power has been temporarily diminished or terminated as a result of injuries arising out of and in the course of employment. (*Board of Education v. Industrial Com.,* 53 Ill. 2d 167, 171.) "The evil to be remedied by that act was that under the common-law rules of master-servant liability, employees injured in the course of their employment had to bear practically the full measure of their loss, hence a substitute system of liability was provided." (*Grasse v. Dealer's Transport Co.,* 412 Ill. 179, 195.) "In construing the provisions of the Workmen's Compensation Act, all portions thereof must be read as a whole and in such manner as to give to them the practical and liberal

interpretation intended by the legislature." *Vaught v. Industrial Com.*, 52 Ill. 2d 158, 165.

An issue similar to the one presented in this appeal arose in *Grasse.* There, the court considered a provision of the Workmen's Compensation Act which precluded an injured employee from recovering common law damages against a third-party tortfeasor if that party was also bound by the Act. If the tortfeasor was not bound by the Act then the injured employee could recover such damages. The court found this classification arbitrary and in no way conducive to the objectives of the Act. As the court stated: "It is readily apparent that there is no rational difference between an employee injured in the course of his employment by a motorbus, and one injured by a farmer's truck. Each may sustain the same injuries, and be entitled to the same amount of compensation from their employers; neither had any control over the circumstances of their injuries, or the status of the party who hit them, yet in one case the statute authorizes the employee to recover damages from the third party, and in the other case the employee must be content with the amount of compensation he may be entitled to receive from his employer." (412 Ill. 179, 196.) The sole basis for differentiation, as far as the injured employee was concerned, was the fortuitous circumstance of whether the tortfeasor was bound to provide coverage under the Act.

To construe section 5(a) as providing general contractors with immunity from actions for damages by injured employees of a subcontractor who carries no compensation insurance would result in the same arbitrary classification condemned in *Grasse.* In the example previously set forth, the two workmen may sustain the same injuries, and each is entitled to compensation under the provisions of the Act (see Ill. Rev. Stat. 1975, ch. 48, pars. 138.3(1) and (2)), regardless of who is liable for those benefits. Yet, the first man may recover damages from the general contractor, while the second must be content with

the amount received as compensation. The sole basis for this differentiation is the fortuitous circumstance of whether the workman's employer carries compensation insurance. Moreover, the classification of general contractors in regard to their liability as third-party tortfeasors is equally arbitrary, for it, too, is based upon the fortuitous circumstance of whether the particular subcontractor provides compensation coverage. Significantly, the real possibility must not be overlooked that in certain situations this may not be such a "fortuitous circumstance" for the general contractor. He may attempt to cloak himself with immunity and thereby abate liability for his negligent or otherwise wilful conduct by hiring only those subcontractors who have no compensation coverage and do not guarantee their liability to pay such.

As heretofore noted, the purpose of the Workmen's Compensation Act is to afford employees financial protection when their earning power is temporarily diminished or terminated due to employment injuries. It was the obvious intent of the legislature in enacting section 1(a)(3) to ensure this purpose was carried out when the employer-subcontractor cannot fulfill this obligation. It was logical and reasonable to impose the liability for compensation benefits upon the general contractor, because he was in a position to hire subcontractors who possessed the necessary insurance. To bestow immunity upon the general contractors would reward those employing subcontractors who have no workmen's compensation coverage but yet are bound by the provisions of the Workmen's Compensation Act; and it would penalize those general contractors who, mindful of the purpose and spirit of said Act, only employ insured subcontractors.

It is the duty of this court to construe acts of the legislature so as to uphold their validity and constitutionality if it can reasonably be done, and if their constitutionality is doubtful, to resolve that doubt in favor of their validity. (*Illinois Crime Investigating Com. v. Buccieri*, 36

Ill. 2d 556, 561.) Accordingly, we must interpret section 5(a) as conferring immunity upon employers only from common law or statutory actions for damages by their immediate employees. To hold otherwise in light of the present factual situations would be violative of the injured employee's right to due process and equal protection of the laws.

The defendants argue that a construction of section 5(a) adverse to their position would result in a violation of their rights to due process and equal protection. They premise this contention on the basis that they are liable to pay compensation benefits without fault under section 1(a)(3) and still remain subject to a subsequent common law or statutory action for damages. We find this argument to be without merit, for under this construction of section 5(a) defendants are placed in no worse position than they are in regard to suits by employees of insured subcontractors. The only difference between the two situations is that in one case the general contractor has paid compensation. He, however, has the right of indemnification against the uninsured subcontractor. If the subcontractor is insolvent, the general contractor who is found liable based upon a common law or statutory cause of action may set off from that award the amount of compensation benefits he has previously paid to the employee. The employee receives no windfall or double recovery. In some cases, where the subcontractor is insolvent and the general contractor prevails in the common law or statutory action, the general contractor must bear the burden of the compensation payments. It must be noted, however, that the general contractor had it within his power to protect himself from this loss by hiring insured subcontractors. Furthermore, it is an underlying rationale of workmen's compensation law that the loss occasioned by injuries to employees should be borne by the common enterprise.

Having predicated our decision on this constitutional basis, we need not consider other arguments raised by the

various parties.

Accordingly, the judgment of the appellate court and the judgment of the circuit court of Franklin County in ' cause No. 47596 are reversed, the judgment of the circuit court of St. Clair County in cause No. 47861 is reversed, the judgment of the circuit court of Cook County in cause No. 48317 is reversed, and all causes are remanded to the respective circuit courts for further proceedings not inconsistent with the views expressed herein.

47596 — *Reversed and remanded.*
47861 — *Reversed and remanded.*
48317 — *Reversed and remanded.*

MR. JUSTICE RYAN, dissenting:

I cannot concur in the majority's decision. I would follow the overwhelming weight of authority which confers immunity upon general contractors when they are required to pay benefits to an employee of an uninsured subcontractor.

Virtually every State has included provisions similar to section 1(a)(3) within their workmen's compensation statutes. (2A A. Larson, The Law of Workmen's Compensation sec. 72.31, at 14—47.) In the vast majority of these jurisdictions, a general contractor is granted immunity from third-party suits when he is treated as the statutory employer and required to pay compensation benefits. (See, e.g., *Georgia Power Co. v. Diamond* (1973), 130 Ga. App. 268, 202 S.E.2d 704; *Lopez-Correa v. Marine Navigation Co.* (D.P.R. 1968), 289 F. Supp. 993; see also 2A A. Larson, The Law of Workmen's Compensation sec. 72.31, at 14—47 n.47, and the cases cited therein.) The reason for this rule is simple fairness. As stated by Professor Larson:

> "Since the general contractor is thereby, in effect, made the employer for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensa-

tion; and the great majority of cases have so held." 2 A A. Larson, The Law of Workmen's Compensation sec. 72.31, at 14–47.

The majority avoids this "obvious" result by concluding that it would encourage the employment of uninsured subcontractors, and by finding a violation of equal protection in the application of the general rule. In my opinion, the first conclusion is merely an unwarranted assumption, while the latter conclusion results from a misinterpretation of the requirements of equal protection of the law.

The majority assumes that a grant of immunity in the present cases would reward those contractors who hire uninsured subcontractors, and would, presumably, encourage such a practice. This assumption has vitality only when limited to a consideration of a single injury to a single employee. It is not unreasonable to assume that a general contractor would accept the lesser financial responsibility under the Workmen's Compensation Act in exchange for immunity from common law and statutory liability in an isolated case. Under the above-mentioned rule, however, the contractor does not exchange immunity from a single personal injury action 'for responsibility for a single compensation claim. Rather, the general contractor is required to accept absolute compensation liability for all injuries of all employees of the uninsured subcontractor in order to gain this immunity. It is, in my opinion, unreasonable to assume that a general contractor would accept absolute liability for all compensation claims in order to gain immunity from the remote possibility of an adverse judgment in a personal injury suit. I, therefore, find little if any justification for the majority's fear that a contrary decision would lead to the increased hiring of uninsured subcontractors.

The true incentive for general contractors to hire insured subcontractors 'is the potential liability for compensation benefits which results from section 1(a)(3) when uninsured subcontractors are employed. Professor Larson,

in fact, has contended that this potential liability is a sufficiently strong incentive to justify the allowance of immunity even when the subcontractor is insured and the general contractor is not called upon to pay compensation benefits. (2A A. Larson, The Law of Workmen's Compensation sec. 72.31, at 14—55-56.) A significant number of jurisdictions have also taken this approach. (2A A. Larson, The Law of Workmen's Compensation sec. 72.31, at 14—53 n.49, 14—55 n.50, and the cases cited therein.) The issue of whether our statute should extend immunity to all general contractors bound by section 1(a)(3) is clearly not present in this case. I do, however, find Professor Larson's discussion of that issue to be an additional persuasive indication that the majority's fear of general contractors cloaking themselves with common law immunity in exchange for absolute compensation liability is illusory. Realization of the objective of section 1(a)(3) would not be hindered by interpreting section 5(a) in accordance with the great weight of authority which is contrary to the majority's position.

I also disagree with the majority's unique holding that to construe section 5(a) as providing immunity to the present defendants would result in a violation of equal protection of the law. I term this holding unique because it appears that we are the first court to adopt such a theory despite the numerous occasions on which the same question has been presented in other jurisdictions. In my opinion, no denial of equal protection would result from construing section 5(a) as granting immunity to general contractors who are treated as statutory employers under section 1(a)(3).

The majority relies upon *Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, to support its finding of a denial of equal protection. In *Grasse,* we invalidated a provision of the Act (Ill. Rev. Stat. 1947, ch. 48, par. 166) which precluded an injured employee from recovering common law damages from a third-party tortfeasor who was also

bound by the Act. *Grasse,* however, did not involve a general-contractor, job-site-injury situation, and the statute in question did not provide for the payment of compensation benefits by the alleged tortfeasor to the injured employee. 412 Ill. 179, 196.

*Grasse* is readily distinguishable from the present case since the immunity which the defendants seek under section 5(a) is dependent upon the requirement of paying benefits under section 1(a)(3). The difference between *Grasse* and the instant appeals is that in *Grasse* the third-party tortfeasor, though generally bound by the Act, was not bound to pay compensation benefits to the injured employee. The statute at issue in *Grasse* gave the employee nothing in return for the loss of his common law rights. The third-party tortfeasor was not, in short, a statutory employer, and there was, therefore, no rational basis to support the classification which gave him an employer's immunity.

Here, the general contractor is placed in the position of the actual employer for compensation purposes. The same considerations which allow immunity to the immediate employer support a grant of immunity to a general contractor who is required to pay compensation benefits to an employee of an uninsured subcontractor. The classification resulting from such immunity is not arbitrary. The purpose of the Workmen's Compensation Act is to provide financial support for all employees injured in the course of employment. A nonfault system of compensation was devised in order to eliminate the evil that existed under common law rules whereby the employee was seldom able to recover damages for his injuries. Employers were granted immunity from common law and statutory damage actions in return for the imposition of nonfault liability for compensation benefits. The Workmen's Compensation Act thus created a *quid pro quo* which has been consistently upheld as a reasonable exercise of legislative power. *Wright v. Central Du Page*

*Hospital Association* (1976), 63 Ill. 2d 313, 327; *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 412.

It is no more a denial of equal protection to grant such immunity to general contractors bound by section 1(a)(3) than it is to grant immunity to the actual employer. In both cases, the employee benefits by the imposition of nonfault compensation liability upon the party deemed to be the statutory employer. The majority's example of the two workmen on the beam, though superficially appealing, is, in fact, illustrative of this *quid pro quo*. The majority implies that the man employed by the uninsured contractor would be arbitrarily deprived of a cause of action by a grant of immunity to the general contractor. What the majority fails to realize is that absent the guarantee of compensation benefits from the general contractor the injured man would in all likelihood recover nothing. As both the majority and I have indicated, workmen's compensation statutes were enacted to circumvent the common law principles which generally prevented recovery for work-related injuries. If it were not for section 1(a)(3) there would be no assurance that the employee would receive any compensation for his injuries. In exchange for this obvious benefit the employee should forfeit his right to a speculative recovery from the general contractor.

It is not unreasonable or arbitrary to require the employee to relinquish his common law rights in return for the guarantee of compensation benefits whether those benefits are to be paid by his actual employer or a general contractor. In my view, there is no constitutional prohibition against interpreting section 5(a) as providing immunity from personal damage actions to general contractors bound by the provisions of section 1(a)(3). I would, therefore, affirm the judgments of the lower courts.

MR. JUSTICE CREBS joins in this dissent.