DAGENHARDT v SPECIAL MACHINE & ENGINEERING, INC

Docket No. 49476. Submitted October 14, 1980, at Detroit.—Decided July 27, 1981. Leave to appeal applied for.

Frank Dagenhardt died as a result of injuries he received when he fell through a skylight on the roof of a building owned and operated by Special Machine & Engineering, Inc., a Michigan corporation. Dagenhardt's employer, Slasor Heating & Cooling Company, had contracted with Special Machine to do certain heating and cooling work. Dagenhardt was performing this work at the time of his accident. Slasor's workers' compensation insurance had lapsed and was not in effect at the time of the accident and Special Machine petitioned the Bureau of Workers' Disability Compensation to determine its liability under the Worker's Disability Compensation Act as a statutorily substituted employer. Special Machine was determined to be liable for payment of compensation benefits to Dagenhardt's dependents. Thereafter, Patricia Dagenhardt, as administratrix of the estate of Frank Dagenhardt, deceased, brought a wrongful death action in Oakland Circuit Court against Special Machine and Naturalite, Inc., a manufacturer of skylights. Special Machine moved for summary judgment on the basis that the exclusive remedy provision of the Worker's Disability Compensation Act operated to transfer to Special Machine the immunity that Slasor would have enjoyed under the act as decedent's employer. The trial court granted summary judgment, William J. Beer, J. Plaintiff appeals. *Held:*

Neither the Michigan Worker's Disability Compensation Act nor court decisions preclude suits against third-party principals

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 13 Am Jur 2d, Building and Construction Contracts § 135.
81 Am Jur 2d, Workmen's Compensation § 59.
General contractor's liability for injuries to employees of other contractors on the project. 20 ALR2d 868.
[2] 13 Am Jur 2d, Building and Construction Contracts § 141.
Liability of subcontractor upon bond or other agreement indemnifying general contractor against liability for damage to person or property. 68 ALR3d 7.
[4] 81 Am Jur 2d, Workmen's Compensation § 2.

or general contractors who are statutory employers. They can be sued in tort despite the fact that in some circumstances they become liable for the payment of compensation benefits. The statutory employer who is held liable for payment of compensation benefits under these circumstances is entitled to indemnification from the uninsured contractor or subcontractor it employs. There is no compelling reason why a worker should not be able to sue a principal or contractor who may be liable for compensation.

Reversed and remanded.

1. WORKERS' COMPENSATION — GENERAL CONTRACTORS — THIRD-PARTY PRINCIPALS — TORT LIABILITY.

Third-party principals and general contractors in Michigan can be sued in tort by an injured employee of a subcontractor despite the fact that in some circumstances they might also become liable for the payment of compensation benefits to the injured employee.

2. WORKERS' COMPENSATION — INDEMNIFICATION — STATUTORILY SUBSTITUTED EMPLOYERS — STATUTES.

A principal or contractor which is liable for payment of compensation benefits as a statutorily substituted employer is entitled to indemnification from the contractor or subcontractor it employs (MCL 418.171[2]; MSA 17.237[171][2]).

3. WORKERS' COMPENSATION — GENERAL CONTRACTORS — PRINCIPALS — TORT LIABILITY.

General contractors and principals are not immune from tort liability for work-related injuries sustained by a subcontractor's employee.

4. WORKERS' COMPENSATION — LEGISLATIVE PURPOSE.

The objective of the workers' compensation legislation is to provide the disabled worker with benefits during the period of his disability so that he and his dependents may survive where they would otherwise experience a loss of needed income; the intended beneficiary of the statute is the employee, not the employer or third-party tortfeasors.

*Klein & Bloom, P.C.,* for plaintiff.

*Moore, Sills, Poling, Wooster & Sinn, P.C.,* for defendant.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

BRONSON, P.J. Frank Dagenhardt died as a result of injuries he sustained when he fell through a skylight on a building owned by defendant-appellee, Special Machine & Engineering, Inc. (hereinafter defendant). At the time this tragic accident occurred, Frank Dagenhardt was employed by Slasor Heating & Cooling Company, which had contracted with defendant to perform certain heating and cooling work. This work required Dagenhardt to go out onto the roof of defendant's plant.

In the contract between Slasor and defendant, Slasor represented that it was fully covered by workers' disability compensation insurance. In fact, on the day of the accident Slasor did not carry such insurance, in violation of MCL 418.611; MSA 17.237(611). Consequently, defendant petitioned the Bureau of Workers' Disability Compensation to determine its liability under MCL 418.171; MSA 17.237(171), as a statutorily substituted employer. Notice of the proceedings were provided to plaintiff, Patricia Dagenhardt, Frank's widow. At the hearing, the administrative law judge ruled that, for purposes of the Worker's Disability Compensation Act, defendant would be liable for the payment of compensation benefits.

A wrongful death action was commenced by plaintiff against defendant and Naturalite, Inc., a manufacturer of skylights who is not involved in this appeal. Defendant moved for summary judgment on the basis that MCL 418.131; MSA 17.237(131) operated to transfer to it the immunity to suit Slasor would have enjoyed under the act as decedent's employer. The trial court granted sum-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mary judgment in an order dated January 4, 1980. Plaintiff appeals as of right from this order.

The precise question of the extent to which a statutorily substituted employer assumes the rights of a direct employer under the Michigan Worker's Disability Compensation Act has not been previously addressed. Other jurisdictions with comparable acts which have considered this question have disagreed as to the correct resolution of this problem as will been seen, *infra.*

MCL 418.171(1); MSA 17.237(171)(1) provides:

"If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; *and if. compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer,* except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. A contractor shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract." (Emphasis added.)

The exclusive remedy provision is found in MCL 418.131; MSA 17.237(131), which states:

"The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 'employee' includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and 'employer' includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract."

The language of §§ 171 and 131 is ambiguous as concerns the resolution of this case. Consequently, we must construe the language of the statutory provisions by considering the objects sought to be accomplished by the Legislature through enactment of the act. See *Hamilton v Superior Mushroom Co,* 91 Mich App 52, 56; 282 NW2d 831 (1979). As will be detailed below, we do not believe defendant is entitled to immunity from tort liability on the facts of this case.[1]

Some 43 states have "statutory-employer" provisions in their workers' compensation disability

---

[1] Even were we to take a literal approach to construing the language employed by the Legislature in MCL 418.171; MSA 17.237(171), defendant would lose on the facts of this case. The literal language of the statutory provision would make defendant an employer for purposes of immunity to a suit in tort only if the worker or the worker's survivor *sought compensation* from defendant. Here, although plaintiff is now receiving compensation benefits, these were voluntarily paid over by defendant. At no time did plaintiff claim compensation benefits or take proceedings against defendant to obtain said benefits. The policy considerations outlined in the body of this opinion apply with equal force to situations in which plaintiff seeks benefits from the statutory employer and those in which plaintiff does not. It may be that MCL 418.171; MSA 17.237(171) was actually intended to serve as a provision requiring the worker or his or her survivor to make an election of remedies in respect to the statutory employer, although we think not. If we are wrong, however, plaintiff in this case did not elect to receive compensation benefits in lieu of instituting a tort action.

acts. 2A Larson, Workmen's Compensation Law, § 72.31, p 14-47. However, these provisions vary in scope and the construction given them by the courts of the individual jurisdictions. The vast majority of those states in which it has been determined that the statutory employer is immune from suit generally reach this result because the principal or general contractor is involved in the same "course of employment" as the direct employer. These jurisdictions do not distinguish between who ultimately was responsible for providing the compensation benefits in a particular case —the direct employer or the statutory employer. Rather, the statutory employer receives the benefit of immunity from suit even where the benefits were paid by the direct employer.[2] The possibility that the statutory employer might become liable for workers' compensation benefits is seen as sufficient reason to hold such an employer immune from tort liability. In Michigan, however, neither the workers' disability compensation statute nor court decisions preclude suits against third-party principals or general contractors who are statutory employers immune from suit in other jurisdictions. Indeed, in *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), the Michigan Surpeme Court held that a plumber who was seriously

---

[2] *Inter alia: O'Quinn v Walt Disney Productions, Inc,* 177 Colo 190; 493 P2d 344 (1972), *Kasowitz v Mutual Construction Co,* 154 Conn 607; 228 A2d 149 (1967), *Georgia Power Co v Diamond,* 130 Ga App 268; 202 SE2d 704 (1973), *Whitaker v Douglas,* 179 Kan 64; 292 P2d 688 (1956), *Jennings v Vincent's Adm'x,* 284 Ky 614; 145 SW2d 537 (Ky App, 1940), *Wofford v Dow Chemical Co,* 335 So 2d 536 (La App, 1976), *State, to Use of Reynolds v City of Baltimore,* 199 Md 289; 86 A2d 618 (1952), *Brown v Gamble Construction Co, Inc,* 537 SW2d 685 (Mo App, 1976), *Fiscus v Beartooth Electric,* 164 Mont 319; 522 P2d 87 (1974), *Baker v Hunn Roofing, Inc,* 399 F Supp 628 (WD Okla, 1975) (applying Oklahoma law), *Moore v Philadelphia Electric Co,* 189 F Supp 808 (ED Pa, 1960) (applying Pennsylvania law), *Lopez-Correa v Marine Navigation Co, Inc,* 289 F Supp 993 (D PR, 1968) (applying Puerto Rican law).

injured when he fell from the roof of the building construction site could sue both the general contractor and the owner of the plant where the work was taking place, even though the subcontractor provided compensation benefits.

In those jurisdictions like Michigan whose law provides that third-party principals and general contractors can be sued in tort despite the fact that in some circumstances they might become liable for the payment of compensation benefits, there is a difference of opinion concerning whether a substituted employer may be sued where it, in fact, has provided compensation benefits. In *Fonseca v Pacific Construction Co, Ltd,* 54 Hawaii 578; 513 P2d 156 (1973), the Hawaiian Supreme Court rejected the position that a general contractor who might become liable for compensation benefits was immune from tort suit under all circumstances. The *Fonseca* Court did hold, however, that, in the relatively rare circumstances in which the general contractor actually did become liable for the payment of benefits, it was immune from common-law liability. See, also, *Ryan v New Bedford Cordage Co,* 421 F Supp 794 (D Vt, 1976) (applying Vermont law).

The opposite result was reached by the Illinois Supreme Court in *Laffoon v Bell & Zoller Coal Co,* 65 Ill 2d 437; 359 NE2d 125 (1976).[3] In that case, a salvage company employee was injured on defendant's premises. Because plaintiff's direct employer did not carry the required workers' compensation insurance, defendant became liable for the payment of benefits. Plaintiff also brought suit against defendant. The trial court granted summary judgment for defendant. The appellate court affirmed,

---

[3] See, also, *Carter v Fraser Construction Co,* 219 F Supp 650 (WD Ark, 1963) (applying Arkansas law), *Sweezey v Arc Electrical Construction Co, Inc,* 295 NY 306; 67 NE2d 369 (1946).

one judge dissenting, and the Supreme Court reversed on a 5-2 vote. The Supreme Court noted that statutory-employer immunity would be an incentive to a contractor or third-party principal to engage uninsured subcontractors. We agree. Supposing statutory-employer immunity, if an injury occurred, the substituted employer would be liable for workers' compensation benefits but all other suits against it would be barred. Since compensation insurance would already be carried by the typical substituted employer for the benefit of its own employees, no additional expenses would be incurred by said employer. If no injury occurred, the substituted employer would not even be responsible for compensation benefits, and likely will have obtained the services of a subcontractor at a lower cost due to the subcontractor's failure to maintain workers' compensation insurance.

The *Laffoon* rationale has been characterized by Professor Larson, perhaps the most eminent scholar in the field of workers' compensation, as having an "Alice-in-Wonderland Through-the-Looking-Glass air about it". 2A Larson (Supp), § 72.31, p 14-56. In deference to Professor Larson's status in this field, we have decided to respond to his criticism of *Laffoon*. Larson notes that the statutory-employer principle was devised in the first place to serve as an incentive for the principal to engage *insured* subcontractors. The fact is, however, that in Michigan and other states which continue to allow an injured worker to sue the principal or prime contractor where compensation benefits are provided by the employee's direct employer, the statutory-employer principle has precisely the opposite effect, as noted above. In the majority of states which extend immunity to the

general contractor or other principals, the statutory-employer concept does create incentive to hire insured subcontractors. In these jurisdictions the general contractor is free from *all* liability unless its subcontractor does not carry the required compensation insurance. It is well and good to note the orginal rationale for the existence of a particular concept but it is quite another matter to decide an individual case in reference to said rationale where it has no applicability to the facts of that case.

Professor Larson further contends that the *Laffoon* majority adopts an erroneous assumption by finding that "freedom from an occasional damage suit looms larger as an incentive to the employer than freedom from absolute liability for all work-connected injuries on a total project". While the *Laffoon* majority provides no empirical data for this proposition, Larson offers none rebutting the same. Similarly, we know of no studies on this question. However, we believe that the proposition advanced by the *Laffoon* majority represents a closer approximation of reality than Larson's view. Professor Larson, himself, notes that a general contractor, by insisting that his subcontractor carry compensation insurance, imposes a cost on the subcontractor which will be passed on to the contractor through the charges levied by the subcontractor. 2A Larson, Workmen's Compensation Law, § 72.31, p 14-56. As such, the principal's or prime contractor's determination is not merely a calculation weighing the relative benefits of total liability for workers' compensation claims, if any, and the possibility of a million dollar personal injury action, if one should arise. The immediate savings to the principal or contractor by hiring a company whose services can be obtained at a lower

cost because of its failure to maintain compensation insurance also enters the calculation. The question then becomes whether this immediate savings and freedom from both liability for a personal injury judgment and the cost of litigating such an action might be perceived as outweighing the potential costs of absolute liability for disability compensation claims brought by the direct employer's workers. It seems to us that many, if not most, contractors would conclude that it would be less expensive for them in the long run to hire subcontractors without insurance.[4] A principal or contractor could realistically project that the work on a particular project would result in few, if any, claims for compensation. To the extent that one or two claims actually had to be paid in connection with a given project, this might be viewed as infinitely more desirable than a million dollar liability judgment.[5] Moreover, for many principals

[4] We do not mean to imply that most contractors would consequently seek the services of companies not carrying workers' compensation insurance. Most contractors might well prefer to deal with insured companies simply because the law requires these companies to carry the insurance. Undoubtedly, however, some contractors would seek out uninsured companies as subcontractors seeing the potential advantages. Other contractors, probably a larger group, would simply not bother to insist that their subcontractors carry insurance. The status of the subcontractor relative to compensation insurance would simply cease to be a relevant consideration. Although this footnote refers to what contractors would do, it applies with equal force to principals who might become statutory employers.

[5] One might ask why a principal or contractor who has concluded that a particular project poses few risks for workers would then be worried about a million dollar liablity judgment for injury to such a worker. While a principal or contractor might see the likelihood of either liability for compensation benefits or for tort liability to be remote indeed, it might nonetheless conclude that the slender chance of a substantial personal injury judgment being taken against it far outweighs the imposition of liability for workers' disability payments. The choice might be viewed as akin to taking out an insurance policy to cover damages caused by some unlikely catastrophic event. The "premiums" would be the cost of providing disability benefits if any should arise and the risk protected against would be the million dollar judgment for a worker's personal injury.

and contractors avoidance of substantial litigation costs in the defense of a personal injury suit might be viewed as preferable to payment of some disability benefits. The cost of defending through trial even a frivolous suit brought by a worker might very well exceed the cost of providing benefits.

Furthermore, in Michigan, a principal or contractor liable to pay compensation as a statutorily substituted employer is entitled to indemnification from the contractor or subcontractor it employs. MCL 418.171(2); MSA 17.237(171)(2) provides:

> "If the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor. The employee shall not be entitled to recover at common law against the contractor for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employee of such contractor, may recover the amount so paid in an action against such contractor."

Thus, contrary to Professor Larson's apparent view, the choice for the principal is not simply absolute liability for workers' compensation benefits and freedom from a possibly devastating personal injury judgment on the one hand or total immunity from liability on the other. Assuming the principal or contractor hires an uninsured company, the possibility that said principal or contractor will be indemnified for any compensation payments it makes to the worker also enters the calculation. The possibility of indemnification makes the *Laffoon* majority's perception that principals would be encouraged to hire uninsured contractors or subcontractors all the more difficult to rebut.

Professor Larson sees a second error in *Laffoon's*

assumption that the general contractor or third-party principal will lose its immunity to damage suits if it is successful in hiring subcontractors with insurance. However, in Michigan this is not an erroneous assumption. As noted previously, in *Funk, supra,* the Michigan Supreme Court held that general contractors and principals are not immune from suit by a subcontractor's employee where said subcontractor carries compensation insurance. Larson attacks *Laffoon* because the majority could have held that a contractor is immune from common-law liability even when his subcontractor is insured. This is in accordance with Larson's belief that the preferred approach is to hold that a contractor's *potential* liability is burden enough to justify the quid pro quo of tort immunity. Whatever applicability this criticism has to the Illinois Supreme Court, we are bound by our Supreme Court's holding in *Funk* and have no power to accept the Larson view as the law in Michigan.

At this point, however, we note our disagreement with what Professor Larson considers the preferred approach to the statutory employer problem. In *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977), the Court stated that the objective of the workers' compensation legislation is to provide the disabled worker with benefits during the period of his disability so that he and his dependents may survive where they would otherwise experience a loss of needed income. *McAvoy* recognizes that the intended beneficiary of the statute is the employee, not the employer nor third-party tortfeasors. As such, we see no

compelling reason why a worker should not be able to sue a principal or contractor who may be liable for compensation.[6]

Since, in our opinion, the Legislature did not intend a statutorily substituted employer to be immune from tort liability, we do not address the question of whether the opposite construction would violate equal protection of the law.

Reversed and remanded for trial.

[6] It should be noted that plaintiff's complaint in this case alleged active negligence on the part of defendant. The same result would not follow if the principal's negligence was alleged to be merely derivative of the worker's direct employer. Our construction of the applicable statutes merely puts the employee in the same position he would have been in had the direct employer carried the required compensation insurance. That is, the employee could have received workers' compensation benefits and sued the actively negligent principal in tort. A principal who is merely derivatively liable for his subcontractor's negligence could not be sued in tort by an employee of that subcontractor if the required compensation insurance was carried. As such, that same principal could not be sued in tort where derivative liability is pled for the reason that the direct employer did not carry workers' compensation insurance. The policy underpinning of this opinion is that all workers, regardless of whether their direct employers do or do not carry the required insurance, should be afforded the same rights with respect to litigation against the principal. Allowing an action to lie where the principal is only derivatively liable of a subcontractor who did not carry insurance would provide preferential treatment to the worker of the uninsured subcontractor.