MICHAEL D. RICHARDSON, Intervening Plaintiff-Appellant, v. RICHARD "DICK" LEIBOVITZ, Defendant-Appellee (Paul Mulcahey, Plaintiff; Eugene R. Johnston *et al.*, Intervenors).

Third District No. 3—93—0976

Opinion filed July 15, 1994.

Dean L. Sutton, of Lytton, Lytton & Sutton, of East Moline, and Mathias W. Delort, of Odelson & Sterk, of Evergreen Park, for appellant.

Dennis M. Faust and Kathleen Bailey, Assistant State's Attorneys, of Rock Island, for appellee Richard "Dick" Leibovitz.

Stuart R. Lefstein and John F. Doak, both of Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., of Rock Island, for William M. Smith, Bess Meersman, Myrtle Pat Johnson, Harold Ford, and Phil Banaszek.

Thomas L. Kilbride, of Rock Island, for Bob DeJaegher and Eugene R. Johnston.

JUSTICE McLAREN delivered the opinion of the court:

Michael D. Richardson, as the intervening plaintiff, appeals the ruling of the circuit court of Rock Island County that a State statute under which a referendum was held in Rock Island County is constitutional. We affirm.

In November 1992, Rock Island County held a referendum in which the voters were asked the following question:

"Shall the County of Rock Island adopt the county executive form of government and elect not to become a home rule unit?"

The language of the referendum was taken from model language provided in section 2—5005(b) of the Counties Code (55 ILCS 5/2—5005(b) (West 1992)). The voters approved the referendum, and an election was scheduled for November 8, 1994, to elect the county's chief executive officer. The candidates for the position include Democrat Paul Mulcahey, Republican William M. Smith, and third-party candidate Michael D. Richardson.

Mulcahey filed an action for declaratory relief alleging that section 2—5005(b) is unconstitutional in that it conflicts with article VII, sections 6(a) and 6(b), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §§ 6(a), (b)). Following intervention by interested

parties, the circuit court accepted briefs and heard oral argument on an expedited schedule. The circuit court ruled that the challenged legislative section was constitutional, and this appeal followed. We granted expedited consideration of this appeal, and we now affirm.

Article VII, sections 6(a) and 6(b), of the 1970 Constitution provide in relevant part:

> "(a) A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. ***
>
> (b) A home rule unit by referendum may elect not to be a home rule unit." Ill. Const. 1970, art. VII, §§ 6(a), (b).

Subsection (b) of section 2—5005 was added to the Counties Code by the General Assembly in 1985. (Pub. Act 84—189, eff. August 23, 1985 (now 55 ILCS 5/2—5005(b) (West 1992).) It provides in relevant part:

> "(b) If the county board adopts a resolution calling for a referendum on the proposal to adopt the county executive form of government and elect not to be a home rule unit within the time provided in the general election law, the county clerk and the county board shall provide for the submission of such proposition to the electors of the county in accordance with this Section at the next general election held in an even-numbered year.
>
> * * *
>
> The proposition shall be in substantially the following form:
>
> Shall the County of ............ Yes
> adopt the county executive form of
> government and elect not to become
> a home rule unit? No"

55 ILCS 5/2—5005(b) (West 1992).

The plaintiff's fundamental argument is that section 2—5005(b) is unconstitutional because it permits a county to simultaneously adopt a chief executive officer and opt out of home-rule status. For the following reasons, we find this argument unpersuasive.

●1 The plaintiff argues that under article VII, section 6(a), of the 1970 Constitution, a county becomes a home-rule unit automatically upon the election of a chief executive officer and may, under section 6(b), opt out of home-rule status by referendum. We agree. However, we disagree with the petitioner's contention that sections 6(a) and 6(b) necessarily require by implication that once a county chooses executive government, it must wait until some later date to opt out of home rule. A plain reading of those sections, and the legislative intent behind them, convinces us that the General Assembly acted

within the dictates of the 1970 Constitution when it enacted section 2—5005 of the Counties Code.

When interpreting a statute, we must ascertain and give effect to the intent of the legislature at the time it enacted the statute. (*Heck v. Central Illinois Light Co.* (1992), 152 Ill. 2d 401, 405.) Because the language of the statute itself provides the best indication of the drafters' intent, "where a statute is clear and unambiguous, a court must enforce the law as enacted, without considering other aids of construction." *Heck*, 152 Ill. 2d at 405-06.

"A statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended." (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 110.) An interpretation that renders a statute valid is always presumed to have been intended by the legislature. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.) The General Assembly may enact any law that is not inhibited by some provision within the Constitution. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 498-99.) A court of review has a duty "to construe acts of the legislature so as to uphold their validity and constitutionality if it can reasonably be done, and if their constitutionality is doubtful, to resolve that doubt in favor of their validity." (*Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 446.) The judicial branch of the government is not charged with political or legislative prerogative and its role in the government's balance of powers has certain defined limits. One of these limits is refraining from striking down legislation unless it offends the State or Federal Constitution. *People ex rel. Sklodowski v. State* (May Term 1993), Nos. 73495, 74181, slip op. at 8-9.

Article VII, sections 6(a) and 6(b), of the 1970 Constitution permit counties to choose an executive form of government and to opt out of home-rule status. There is nothing in these sections which explicitly forbids counties from taking these actions simultaneously.

We note that the 1970 Constitution was enacted at a time when home-rule status was a novel form of government which was presumed to be a panacea for the many ills that afflicted local units of government. In the more than two decades that have passed since, numerous statutes have been enacted to enlarge the powers of non-home-rule units and address the problems that these units face. The legislature, in adding subsection (b) to section 2—5005 of the Counties Code, was acting upon 15 years of experience with home rule. We find nothing in section 2—5005 which conflicts with the 1970 Constitution.

Although we need not go beyond the clear and unambiguous language of the 1970 Constitution and section 2—5005 in resolving this matter, we find support for our position in the legislative history of the 1970 Constitution. The committee report on article 7, section 6, provided:

> "The Committee's primary goal was to create flexibility and freedom at the local governmental level, so that change in the future would be possible and desirable." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1571.

We believe it is readily apparent that the flexibility and freedom which the framers of the 1970 Constitution sought for counties would be thwarted by the narrow and formalistic interpretation of article VII, section 6, urged upon us by the plaintiff. Such an interpretation would impose on counties the unnecessary cost, delay, and nuisance of having to conduct two elections: the first to choose an executive form of government, and the second to opt out of home-rule status.

The plaintiff also argues that section 2—5005 is unconstitutional because it provides for a compound referendum question that is "so confusing that voters cannot easily determine what they are deciding." We disagree. The Rock Island County referendum, which mirrored the language of section 2—5005(b), asked:

> "Shall the County of Rock Island adopt the county executive form of government and elect not to become a home rule unit?"

Clearly, voters knew that a "yes" vote meant assent to both propositions. A voter who wished some other form of government would have to vote "no." Merely because some voters may have preferred some other mix of governmental organization does not make the Rock Island referendum, or the model questions provided in sections 2—5005(a) and 2—5005(b), unconstitutional. Voters who might prefer some other governmental form are free to attempt to have such matters placed on the ballot through the referendum procedure.

Article III, section 3, of the 1970 Constitution provides: "All elections shall be free and equal." (Ill. Const. 1970, art. III, § 3.) Our supreme court, in *Coalition for Political Honesty v. State Board of Elections* (1980), 83 Ill. 2d 236, noted that, despite some older cases which barred multiple-question ballot propositions as a violation of the "free and equal" clause, more recent cases "clearly establish that it is only separate and *unrelated* questions which cannot be combined in a single proposition." (Emphasis in original.) *Coalition*, 83 Ill. 2d at 254.

The court in *Coalition* upheld the validity of a compound-question referendum which asked voters to decide whether they wished to

reduce the size of the House of Representatives, abolish cumulative voting, and elect representatives from single-member districts. The court noted that requiring all three propositions to be put in separate questions in a single election might lead to "incongruous results." (*Coalition*, 83 Ill. 2d at 255.) The alternative of "presenting the questions at separate elections, would require at least four years of uncertainty and confusion caused by a legislature in an intermediate stage of development, and might, depending on the order in which the questions were presented, produce incongruous results." *Coalition*, 83 Ill. 2d at 255.

We believe the same problem is faced here by Rock Island County. There are, of course, four possible combinations that involve both chief executive government and home rule: (1) a government with home rule and an executive, (2) no home rule and no executive, (3) an executive but no home rule, (4) home rule but no executive. If Rock Island County were forced to put each possible alignment before the voters, the results could lead to confusion, waste, and the creation of an ineffective governmental form. We see no reason to force the county to offer options to the voters which the voters might not understand and which might lead to a government organization that is unworkable and contrary to the public good.

●2 The court in *Coalition* determined that two issues may be joined in a single referendum if "they are reasonably related to a common objective in a workable manner." (*Coalition*, 83 Ill. 2d at 256.) Here, the two questions presented in the referendum question are clearly worded and are related to a common objective, the creation of county government best suited to the needs and desires of Rock Island County's citizens.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

GEIGER and WOODWARD, JJ., concur.