DAGENHARDT v SPECIAL MACHINE & ENGINEERING, INC

Docket No. 67751. Argued April 7, 1983 (Calendar No. 17).—Decided
    March 12, 1984. Rehearing denied 419 Mich 1207.

Patricia Dagenhardt, administratrix of the estate of Frank Da-
    genhardt, deceased, brought an action in the Oakland Circuit
    Court for wrongful death against Special Machine & Engineer-
    ing, Inc. Special Machine had contracted with Slasor Heating &
    Cooling Company, Frank Dagenhardt's employer, for the per-
    formance of certain heating and cooling work in Special Ma-
    chine's building which required Frank Dagenhardt to go onto
    the roof of the building, where he fell through a skylight.
    Naturalite, Inc., the manufacturer of the skylight, is also a
    defendant. The court, William J. Beer, J., granted Special
    Machine's motion for summary judgment on the ground that
    because Slasor did not carry workers' compensation insurance
    at the time of the accident, Special Machine was liable for the
    payment of compensation benefits, and the action was barred
    by the exclusive remedy provision of the workers' compensation
    act. The Court of Appeals, Bronson, P.J., and D. E. Holbrook,
    Jr., and Ransom, JJ., reversed (Docket No. 49476). The defen-
    dant appeals.

    In an opinion by Justice Cavanagh, joined by Justices Ryan,
    Brickley, and Boyle, the Supreme Court held:

    A principal who is liable to pay workers' compensation
    benefits is an employer within the meaning of the workers'
    compensation act for the purpose of invoking the exclusive
    remedy provision of the act against a worker or his estate in
    an action in tort.

    1. A principal who employs a contractor who is not insured
    as provided by the workers' compensation act is liable to pay
    disability compensation for an employee of the contractor who
    is injured or killed while performing work for the contractor if
    the principal would have been liable had the employee been
    immediately employed by him. References in the act to an
    "employer" apply to the principal where compensation is

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 81 Am Jur 2d, Workmen's Compensation §§ 50, 59.

claimed from or proceedings are initiated against the principal, including references in the exclusive remedy provision of the act. Once liability to pay compensation is imposed upon a principal, he is immune from liability in tort.

2. The workers' compensation scheme seeks to compensate a disabled worker for the loss of needed income by prompt, voluntary payment of benefits by an employer once liability has been imposed. In exchange, the employee is barred from pursuing a remedy against the employer in tort. The employee may seek recovery in tort from a third party, and the employer is entitled to reimbursement for benefits paid and credit for future benefits where recovery is successful. Where a principal is substituted for an employer, the same liability, immunity, and entitlement apply.

Reversed and remanded.

Justice Levin, joined by Chief Justice Williams and Justice Kavanagh, dissenting, would hold that an action in tort against a contractor by the personal representative of the estate of a worker who died as a result of injuries sustained while employed by a subcontractor who was not insured under the workers' compensation act is not barred by the exclusive remedy provision of the act, even though the contractor paid workers' compensation benefits under the "contracting" provision of the act.

1. A contractor is liable to pay workers' compensation benefits to an employee of a subcontractor or the employee's dependents where the subcontractor fails to obtain workers' compensation insurance or to otherwise secure payment of benefits. Where such benefits are claimed, reference to the contractor in the workers' compensation act is substituted for reference to the employer. Workers' compensation benefits are an employee's exclusive remedy against an employer. An action in tort may, however, be maintained, since 1952, by an employee of a subcontractor or his dependents against a contractor for injuries received where the subcontractor has purchased workers' compensation insurance or the worker or his dependents do not obtain benefits from the contractor. It was not the intention of the Legislature to apply the exclusive remedy provision to bar recovery by the employee of a subcontractor from a contractor if benefits are obtained from the contractor.

2. The exculpation of an employer from tort liability set forth in the exclusive remedy provision is a trade-off for being *subject*

to tort liability, not for being *subjected* in a particular case to tort liability. The exclusive remedy provision is thus designed to relieve an employer, unconditionally *subject* to workers' compensation liability to a worker, from tort liability to him without regard to whether the worker seeks or accepts workers' compensation benefits after injury. The policy expressed in the exclusive remedy provision does not extend to a contractor who *is* generally subject to tort liability to a worker in the employ of a subcontractor and who is *not* generally subject to workers' compensation liability to the worker, but who may be *subjected* to workers' compensation liability to him only if the subcontractor is uninsured and the worker seeks workers' compensation benefits from the contractor after injury. As originally enacted in 1912 and until 1952, the dual liability provision of the act barred an action in tort against a third-party tortfeasor if the worker sought workers' compensation benefits after injury. That policy was reiterated in a clause in the contracting provision that barred a worker who sought workers' compensation benefits from the contractor from maintaining an action against the subcontractor "or any other person". An action against the contractor was thus barred by both the dual liability provision and the complementary "or any other person" clause.

The 1921 Legislature, which enacted the contracting provision, and the 1943 Legislature, which restated this provision when workers' compensation coverage was made mandatory, did not look to the *exclusive remedy provision* as the operative provision to exculpate from tort liability a contractor called upon to pay workers' compensation benefits that a subcontractor had not provided. They rather looked to the dual liability provision and the complementary "or any other person" clause specifically enacted to assure that result.

In 1952, the dual liability provision of the act was amended to permit a worker who had received workers' compensation benefits to maintain an action in tort. In 1954, an apparent curative amendment of the contracting provision (last previously amended in 1943) was enacted to eliminate the "or any other person" clause that would have, if literally construed, continued to bar a tort action by a worker employed by an uninsured subcontractor against any person, including the contractor as an "other person". By so striking the "or any other person" clause, the Legislature eliminated the contractor's exculpation from tort liability under the *contracting provision* and evidenced a purpose and intent that a worker injured in the employ of an uninsured subcontractor, like all other

injured workers, could both claim workers' compensation benefits and sue in tort.

The purpose of the 1952 and 1954 legislation—to secure to the injured worker the benefit of a recovery obtainable in tort to the extent it may exceed workers' compensation benefits—is not served by a construction of the act that transforms the nature of the *exclusive remedy provision,* relied on in the majority opinion as the operative provision for exculpating the contractor from tort liability, so that it became for the first time (in 1952 and 1954) in respect to a contractor from whom workers' compensation benefits were claimed, and no other person, a trade-off for being *subjected* to workers' compensation liability.

108 Mich App 75; 310 NW2d 41 (1981) reversed.

### OPINION OF THE COURT

1. WORKERS' COMPENSATION — EMPLOYERS — PRINCIPALS — EXCLU-
SIVE REMEDY.

A principal who is liable to pay workers' compensation benefits because an employer who contracted with the principal is uninsured is an employer within the meaning of the workers' compensation act for the purpose of invoking the exclusive remedy provision of the act against an injured worker or his estate in an action in tort (MCL 418.131, 418.171; MSA 17.237[131], 17.237[171]).

2. WORKERS' COMPENSATION — EMPLOYERS — PRINCIPALS — LIABILITY
— DISABILITY BENEFITS.

A principal who employs a contractor who is not insured as provided by the workers' compensation act is liable to pay disability compensation for an employee of the contractor who is injured or killed while performing work for the contractor for which the principal would have been liable had the employee been immediately employed by him (MCL 418.171; MSA 17.237[171]).

### DISSENTING OPINION BY LEVIN, J.

3. WORKERS' COMPENSATION — CONTRACTORS — SUBCONTRACTORS —
LIABILITY.

*An action in tort against a contractor by the personal representative of the estate of a worker who died as a result of injuries sustained while employed by a subcontractor who was not insured under the workers' compensation act is not barred by the exclusive remedy provision of the act, even though the*

*contractor paid workers' compensation benefits under the "contracting" provision of the act (MCL 418.171; MSA 17.237[171]).*

*Klein & Bloom, P.C.* (by *Gary M. Bloom),* for the plaintiff.

*Moore, Sills, Poling & Wooster, P.C.* (by *Richard B. Poling, Jr.),* for defendant Special Machine & Engineering, Inc.

CAVANAGH, J. The trial court granted summary judgment in favor of defendant Special Machine & Engineering, Inc. (hereinafter referred to as defendant) on the ground that plaintiff's cause of action was barred by the exclusive remedy provision[1] of the Worker's Disability Compensation Act.[2]

# I

The facts in this matter were succinctly stated by the Court of Appeals:

"Frank Dagenhardt died as a result of injuries he sustained when he fell through a skylight on a building owned by defendant-appellee, Special Machine & Engineering, Inc. (hereinafter defendant). At the time this tragic accident occurred, Frank Dagenhardt was employed by Slasor Heating & Cooling Company, which had contracted with defendant to perform certain heating and cooling work. This work required Dagenhardt to go out onto the roof of defendant's plant.

"In the contract between Slasor and defendant, Slasor represented that it was fully covered by workers' disability compensation insurance. In fact, on the day of the accident Slasor did not carry such insurance, in violation of MCL 418.611; MSA 17.237(611). Conse-

---

[1] MCL 418.131; MSA 17.237(131).

[2] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

quently, defendant petitioned the Bureau of Workers' Disability Compensation to determine its liability under MCL 418.171; MSA 17.237(171), as a statutorily substituted employer. Notice of the proceedings were provided to plaintiff, Patricia Dagenhardt, Frank's widow. At the hearing, the administrative law judge ruled that, for purposes of the Worker's Disability Compensation Act, defendant would be liable for the payment of compensation benefits.

"A wrongful death action was commenced by plaintiff against defendant and Naturalite, Inc., a manufacturer of skylights who is not involved in this appeal. Defendant moved for summary judgment on the basis that MCL 418.131; MSA 17.237(131) operated to transfer to it the immunity to suit Slasor would have enjoyed under the act as decedent's employer. The trial court granted summary judgment in an order dated January 4, 1980.[3]" *Dagenhardt v Special Machine & Engineering, Inc,* 108 Mich App 75, 77-78; 310 NW2d 41 (1981).

The Court of Appeals reversed the judgment of the trial court and remanded the case for trial, finding that plaintiff's wrongful death action was not barred by the exclusive remedy provision because: (1) it could see no compelling reason why a worker should not be able to sue a principal or contractor who might also be liable for compensation, especially since a principal or contractor held liable for payment of compensation is entitled to be indemnified by the uninsured contractor or subcontractor it employs, and (2) alternatively, since defendant voluntarily paid benefits to the decedent's dependents, a literal interpretation of § 171 of the WDCA led to that result.

We granted leave to appeal.

---

[3]We note that the motion should have been denominated as one for accelerated judgment, pursuant to GCR 1963, 116.1(2), and it will be treated as such because no prejudice to plaintiff is alleged or apparent. See, *e.g., Bednarski v General Motors Corp,* 88 Mich App 482, 484, fn 1; 276 NW2d 624 (1979), and the authorities cited therein.

II

Section 171 of the WDCA reads as follows:

"Sec. 171. (1) If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and if compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. A contractor shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract.

"(2) If the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor. The employee shall not be entitled to recover at common law against the contractor for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employee of such contractor, may recover the amount so paid in an action against such contractor." MCL 418.171; MSA 17.237(171).

The question before us is whether the foregoing

provision of the WDCA causes § 131, the exclusive remedy provision, to apply in this case.

"Sec. 131. The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 'employee' includes the person injured, his personal representatives and any other person to . whom a claim accrues by reason of the injury to or death of the employee, and 'employer' includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract." MCL 418.131; MSA 17.237(131).

Essentially, defendant claims that, by the unambiguous language of §§ 131 and 171, principals must be permitted to invoke the exclusive remedy provision and that it should not be penalized for having been forthright, *i.e.*, for voluntarily paying compensation to decedent's dependents.

On the other hand, plaintiff claims that, because the applicable statutory language is ambiguous, principals are not employers within the meaning of § 131 and that, in any event, defendant cannot invoke the exclusive remedy provision because it voluntarily paid compensation in this case. Plaintiff also claims that if the WDCA is interpreted in defendant's favor, then she will be deprived of her state and federal constitutional rights to due process and equal protection. However, we note that plaintiff's constitutional claims are not properly before this Court because they were not presented to the trial court. See *Falk v Macomb County Civil Service Comm,* 57 Mich App 134, 137; 225 NW2d 713 (1974), *lv den* 394 Mich 819 (1975), and the authorities cited therein.

III

Shortly before the Court of Appeals decision in this case, another panel of that Court considered the present issue and held that

"the language which the Legislature employed in the act serves to afford the defendant the immunity of § 131. The Legislature has clearly stated that, when a principal becomes liable for the payment of workers' compensation benefits, references to the principal are to be substituted for references to the employer in other sections of the act. There is no indication that the Legislature intended this to be true everywhere but in the exclusive remedy provision. While the logic of this situation may be questioned after examination of the entire statutory scheme, we are not allowed to substitute our ideas for the Legislature's. Accordingly, plaintiff's arguments concerning the construction of the act are more appropriately addressed to that forum." (Footnote omitted.) *Drewes v Grand Valley State Colleges,* 106 Mich App 776, 784; 308 NW2d 642 (1981).

We approve the foregoing language from *Drewes.* There is nothing in the workers' disability compensation scheme to suggest that § 171 does not apply to the exclusive remedy provision. Indeed, the principal incurs liability for an injured worker's disability compensation benefits merely because that worker was employed by an uninsured employer and was injured while performing work which the principal contracted for the employer to perform. Once liability has been imposed and the injured worker seeks or receives disability compensation benefits from the principal, "then, in the application of this act, reference to the principal *shall* be substituted for reference to the employer". (Emphasis added.) The statute's directive that "reference to the principal shall be substi-

tuted for reference to the employer" is clear and unambiguous. Thus, we need undertake no further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453, 455-456; 235 NW 217 (1931).

Conversely, § 131 appears to limit the term "employer" to the employer, the employer's insurer, the employer's service agent if self-insured, or the accident fund. Thus, an apparent conflict with § 171 is created because the directive of § 171 is mandatory, "shall be substituted". *State Highway Comm v Vanderkloot,* 392 Mich 159, 178-182; 220 NW2d 416 (1974) (opinion of WILLIAMS, J.). Nevertheless, since the intention of the Legislature in enacting the WDCA was to provide disabled workers with benefits during the periods of their disabilities so that they and their dependents might survive an otherwise catastrophic loss of needed income, *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977), it is reasonable to interpret the term "employer" appearing in § 131 as including the term "principal". Indeed, "provisions of a statute must be construed in light of the other provisions of the statute, in such a manner as to carry out the apparent purpose of the Legislature". *Workman v DAIIE,* 404 Mich 477, 507; 274 NW2d 373 (1979). Also, *In re Petition of State Highway Comm,* 383 Mich 709, 714-715; 178 NW2d 923 (1970). Section 131 does not exclusively limit the interpretation of the term "employer". Rather, it sets forth a list of entities deemed to be the employer for purposes of the exclusive remedy provision, *i.e.,* an employer "includes" those entities. Substituting the principal for the employer in § 131 does no violence to the purpose of the act, nor does it disrupt the list of entities enumerated in that section, *i.e.,* the list will accordingly refer to the principal's insurer or service agent since the

contractor will have none, and the accident fund. Consequently, when construed together and in conjunction with the legislative intent, §§ 131 and 171 require that a principal liable for a worker's disability compensation benefits is entitled to invoke the exclusive remedy provision against that worker, *i.e.*, principals are employers within the meaning of § 131.

# IV

Our conclusion is not altered by the fact that, in this case, compensation benefits were voluntarily paid by defendant to decedent's dependents.[4] As previously noted, liability for a worker's disability compensation benefits is imposed upon the principal merely because that worker was employed by an uninsured employer and was injured while performing work which the principal contracted for the employer to perform. Section 171 then states that substitution of the term "principal" for the term "employer" shall occur "if compensation is claimed from or proceedings are taken against the principal". However, when examining the entire workers' disability compensation scheme, it becomes clear that the imposition of liability itself is sufficient to allow a principal to invoke the protection of § 131.

---

[4] Actually, plaintiff does not dispute defendant's representations that: (1) plaintiff made a claim for workers' disability compensation benefits of defendant on September 11, 1978, (2) defendant voluntarily began paying benefits on September 15, 1978, (3) sometime thereafter, defendant petitioned the Bureau of Workers' Disability Compensation for a determination of rights, and (4) pursuant to § 171, the hearing referee found defendant liable for benefits and ordered that they be paid. However, the record before us is unclear as to whether plaintiff made any claim of defendant. Nevertheless, whether plaintiff made a claim, whether defendant voluntarily paid benefits, or whether the compensation proceedings were instituted on defendant's petition is unimportant to our analysis and holding.

Like § 171, § 301 of the WDCA imposes liability upon the employer or principal at the time of the injury and, in addition, directs that compensation *"shall be paid"*. (Emphasis added.) MCL 418.301(1); MSA 17.237(301)(1).[5] The mandatory obligation to pay disability compensation benefits arises regardless whether "compensation is claimed from or proceedings are taken against" the employer or principal. Similarly, several other sections of the WDCA direct mandatory payment of benefits once liability has been imposed.[6] Finally, and most importantly, § 801 provides, in pertinent part, that

"[c]ompensation shall be paid *promptly* and directly to the person entitled thereto and shall become due and payable on the fourteenth day after the employer has notice or knowledge of the disability or death, on which date all compensation then accrued shall be paid.

---

[5] MCL 418.301(1); MSA 17.237(301)(1), reads in full as follows:

"An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act. In the case of death resulting from the personal injury to the employee, compensation shall be paid to the employee's dependents as provided in this act. Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the employee's disability or death."

Sections 321 and 375 provide the method of payment which *shall* be made in the event that the personal injury received results in death. MCL 418.321, 418.375; MSA 17.237(321), 17.237(375).

[6] See, *e.g.,* MCL 418.345; MSA 17.237(345) (in case of death, payment of "the reasonable expense of the employee's last sickness and burial"). MCL 418.351(1); MSA 17.237(351)(1) (payment of benefits during periods of total incapacity); MCL 418.352; MSA 17.237(352) (payment of supplemental benefits); MCL 418.361; MSA 17.237(361) (payment of benefits during periods of partial incapacity and for total and permanent disabilities). Analogously, an employer can be authorized as a self-insurer upon showing, *inter alia,* the "financial ability to pay the compensation and benefits provided for in this act and to make payments directly to the employer's employees as the employees become entitled to receive the payment under the terms and conditions of this act". MCL 418.611(1)(a); MSA 17.237(611)(1)(a).

Thereafter compensation shall be paid in weekly installments." (Emphasis added.) MCL 418.801(1); MSA 17.237(801)(1).

Indeed, since the act is designed to compensate a disabled worker for the loss of needed income, prompt, voluntary payment of benefits by an employer or a principal advances that purpose.[7] Likewise, a subsequent petition for a determination of rights can be submitted by "any party in interest", MCL 418.847; MSA 17.237(847), because

"[n]either the payment of compensation or *[sic]* the accepting of the same by the employee or his dependents shall be considered as a determination of the rights of the parties under this act." MCL 418.831; MSA 17.237(831).

Thus, when viewed in context, it must be held, contrary to the implication of the Court of Appeals, that § 171 is not an election of remedies provision. Rather, it was designed to complement the remainder of the WDCA. As such, the same limitations preventing an injured worker from suing his or her employer in tort apply when that same worker wishes to sue a § 171 principal. Section 171 merely emphasizes that an injured worker cannot secure a tort recovery from a principal who is liable to pay that worker disability compensation benefits. Consequently, plaintiff's wrongful death action against defendant is barred by § 131 of the WDCA.

---

[7] "Any worker's compensation schema has, therefore, as its primary goal the delivery of sustaining benefits to a disabled employee *as soon as possible after an injury occurs, regardless of any traditional tort concepts of liability.*" (Emphasis added.) *McAvoy, supra,* p 437.

## V

Our result today complies with the object of the workers' disability compensation scheme and approximates that of the typical situation. Generally, an injured worker collects compensation through his or her employer. Further, although the employer is immune from tort liability, the worker can seek a tort recovery from a third party, such as a principal. However, a successful tort recovery entitles the worker's employer to reimbursement for disability compensation benefits previously paid and to credit for benefits due in the future. MCL 418.827; MSA 17.237(827).

Similarly, in a case such as the present, an injured worker collects compensation through the principal. Further, although the principal is immune from tort liability, the worker can seek a tort recovery from a third party.[8] However, a successful tort recovery entitles the principal to reimbursement for disability compensation benefits previously paid and to credit for benefits due in the future. MCL 418.827; MSA 17.237(827). In addition, the principal has another avenue of relief available, *i.e.,* indemnification from the worker's uninsured employer. MCL 418.171(2); MSA

---

[8] However, a tort recovery cannot be sought from the worker's uninsured employer, if compensation is paid by the principal. MCL 418.171(2); MSA 17.237(171)(2). Such would subject the uninsured employer to two potential burdens for the same injury, *i.e.,* indemnifying the principal for disability compensation benefits and satisfying the injured worker's tort judgment, with no possible setoff. Of course, if the principal does not pay compensation and is adjudged not to be liable to pay, the injured worker can seek a recovery in tort from the uninsured employer. In such a case, the uninsured employer will be subject to only one potential burden.

17.237(171)(2).[9] In any event, it does not alter the workers' disability compensation scheme, *i.e.,* the party liable to pay disability compensation benefits is immune from tort liability. The contrary result reached by the Court of Appeals in this case unfairly imposes two burdens upon a principal which are never imposed upon an injured worker's direct employer.[10]

The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court for entry of a judgment consistent with this opinion.

---

[9] We quote approvingly the following observations from *Drewes, supra,* pp 786-788:

"[T]he principal must pay workers' compensation benefits to the injured employee of the uninsured contractor, while the same is not true in a case where the contractor is insured for workers' compensation purposes. While it might be argued that this burden means little since the principal can seek indemnification from the uninsured contractor under § 171(2), or can set off workers' compensation payments against an eventual tort recovery under § 827(5), the fact remains that the principal is burdened with the actual and administrative costs of making the payments in the first place. In addition, while the principal may seek to be indemnified by the contractor for any compensation benefits paid, the principal is still burdened with the costs of litigation in seeking such a recovery and may, for any number of procedural reasons, be ultimately unsuccessful in the attempt.

\* \* \*

"While the provisions of the act which provide such remedies to the principal might, in the end, compensate the principal for the amount of benefits paid, they do not compensate for the administrative and other costs associated with payment of such benefits in the first place. The Legislature may well have intended that the principal be granted immunity from suit in exchange for the costs and difficulties imposed, and we do not believe that this is unreasonable in the constitutional sense. We note that an ordinary employer might also, under § 827(5), recover the workers' compensation benefits paid to the worker from any judgment the worker obtains against a third party, and yet this fact does not serve to remove the ordinary employer's immunity from suit."

[10] This is true even though the Court of Appeals would seem to permit the principal to invoke § 827(5) after incurring tort liability. Nevertheless, the observations quoted in fn 9 are still relevant.

RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.

LEVIN, J. *(to affirm).* The question presented is whether the personal representative of the estate of a worker who died as the result of injuries sustained in the employ of a subcontractor is barred by the "exclusive remedy" provision of the workers' compensation act from maintaining an action in tort against the contractor who, when the subcontractor failed to provide workers' compensation benefits, paid such benefits to the worker's dependents pursuant to the "contracting" provision of the act. We would hold that an action against the contractor is not barred.

(As first enacted in 1921[1] and subsequently amended[2] and re-enacted,[3] the contracting provision of the workers' compensation act refers to a person for whom work is to be performed as the "principal", and to a person who agrees to perform the work as the "contractor". In this opinion, in an effort to ease and clarify the presentation, we instead adopt the everyday usage, and refer to the person or entity for whom the work is to be performed as the "contractor", rather than as the "principal", and to the person or entity who agrees to perform the work as the "subcontractor", rather than as the "contractor".)

I

The "contracting" provision, added to the work-

_____

[1] 1921 PA 173.
[2] 1943 PA 245; 1954 PA 175.
[3] 1969 PA 317.

ers' compensation act in 1921, states that when a subcontractor fails to obtain workers' compensation insurance or otherwise to secure payment of workers' compensation benefits, an employee of the subcontractor or the employee's dependents can recover benefits from the contractor.[4] The contracting provision further states that when benefits are claimed from the contractor, "in the

[4] The contracting provision was added in 1921. It provided that when a contractor who had elected to provide coverage under the act contracted with a subcontractor who had not so elected for the performance of work that the contractor otherwise would have performed, the contractor would be subject to liability for the payment of workers' compensation benefits to a worker injured in the employ of the non-electing subcontractor.

The contracting provision as first enacted read:

"Sec. 10. (a) Where any employer subject to the provisions of this act, (in this section referred to as the principal), contracts with any other person (in this section referred to as the contractor), who is not subject to this act and who does not become subject to this act prior to the date of the accidental injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, reference in the application of this act, reference in the application of this act shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed: *Provided*, That the term 'contractor' shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract;

"(b) Where the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor as the case may be, but the employe shall not be entitled to recover at common law against the contractor or any other person for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employe of such contractor, may recover the amount so paid in an action against such contractor." 1921 PA 173, part I, § 10.

In 1943, when workers' compensation coverage was made mandatory (see fn 35), the contracting provision was amended by the addition of the italicized words:

application of this act, reference to the principal [the contractor] shall be substituted for reference to the employer".[5]

Reading the "reference" clause of the contracting provision[6] together with the "exclusive remedy" provision of the act,[7] which states that a proceeding to obtain workers' compensation benefits is the exclusive remedy of the worker and his dependents against the "employer", the contractor contends, and the majority holds, that the personal representative of the worker's estate cannot maintain a tort action against the contractor because the worker's dependents obtained workers' compensation benefits from the contractor, even

---

"Sec. 10. (a) Where any employer subject to the provisions of this act (in this section referred to as the principal), contracts with any other person (in this section referred to as the contractor), who is not subject to this act *or who has not complied with the provisions of section 1 of part 4* and who does not become subject to this act *or comply with the provisions of section 1 of part 4* prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him". (Emphasis added.) 1943 PA 245, part I, § 10.

The contracting provision was amended in 1954 to eliminate the "or any other person" clause in subparagraph (b):

"(b) Where the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor as the case may be, but the employee shall not be entitled to recover at common law against the contractor for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employee of such contractor, may recover the amount so paid in an action against such contractor." 1954 PA 175, part 1, § 10(b).

The contracting provision was re-enacted as § 171 of 1969 PA 317 with stylistic changes. There were no substantive changes, however, and the relevant language discussed in this opinion was unchanged.

[5] *Id.*

[6] *Id.*

[7] See fn 25.

though such an action could be maintained if either (i) the subcontractor had purchased workers' compensation insurance, or (ii) the worker's dependents had not obtained from the contractor the workers' compensation benefits that the subcontractor failed to provide.

The majority opinion adopts the reasoning of the Court of Appeals in *Drewes v Grand Valley State Colleges,* 106 Mich App 776, 784; 308 NW2d 642 (1981), where the Court said that because there is "no indication that the Legislature intended" for the "reference" clause to be applied "everywhere [in the act] but in the exclusive remedy provision", an action in tort cannot be maintained against the contractor. The Court of Appeals said that "[w]hile the logic of this situation may be questioned after examination of the entire statutory scheme, we are not allowed to substitute our ideas for the Legislature's".[8]

We agree that, absent a basis for concluding that the policy expressed in the exclusive remedy provision does not apply, we would be obliged to enforce the language as written. We also agree that where the Legislature has spoken we cannot substitute our ideas of sound public policy for those of the Legislature.

There is, however, reason to believe that

A) the policy of the exclusive remedy provision, relied on in the majority opinion to exculpate the contractor from tort liability, does not extend to a contractor required to pay workers' compensation benefits because his subcontractor is uninsured, and

---

[8] In the instant case the Court of Appeals held that the contractor was subject to tort liability. *Dagenhardt v Special Machine & Engineering, Inc,* 108 Mich App 75; 310 NW2d 41 (1981).

B) the 1921 Legislature, which added the contracting provision,[9] did not intend to insulate from tort liability under the exclusive remedy provision a contractor required to pay benefits in those circumstances, and

C) it was not part of the legislative purpose, when the act was subsequently amended in the early 1950's to authorize for the first time a worker who had received workers' compensation benefits to seek a larger award against a third-party tortfeasor,[10] to bar a worker, injured in the employ of an uninsured subcontractor, who obtains benefits from a contractor from maintaining a tort action against the contractor.

## A

The exculpation of an employer from tort liability set forth in the exclusive remedy provision is a trade-off for being *subject* to tort liability, not for being *subjected* in a particular case to tort liability. The exclusive remedy provision is thus designed to relieve an employer, unconditionally *subject* to workers' compensation liability to a worker, from tort liability to him without regard to whether the worker seeks or accepts workers' compensation benefits after injury. The policy expressed in the exclusive remedy provision does not extend to a contractor who *is* generally subject to tort liability to a worker in the employ of a subcontractor and who is *not* generally subject to workers' compensation liability to the worker, but who may be *subjected* to workers' compensation

[9] See fn 4.
[10] See fn 30.

liability to him only if the subcontractor is uninsured and the worker seeks workers' compensation benefits from the contractor after injury.[11]

### B

As originally enacted in 1912 and until 1952, the dual liability provision[12] of the act barred an action in tort against a third-party tortfeasor if the worker sought workers' compensation benefits after injury. That policy was reiterated in a clause in the contracting provision that barred a worker who sought workers' compensation benefits from the contractor from maintaining an action against the subcontractor "or any other person".[13] An action against the contractor was thus barred by both the dual liability provision and the complementary "or any other person" clause.

The 1921 Legislature, which enacted the contracting provision,[14] and the 1943 Legislature, which restated this provision when workers' compensation coverage was made mandatory,[15] did not look to the *exclusive remedy provision* as the operative provision to exculpate from tort liability a contractor called upon to pay workers' compensation benefits that a subcontractor had not provided. They rather looked to the dual liability provision and the complementary "or any other person" clause specifically enacted to assure that result.

### C

In 1952, the dual liability provision of the act

---

[11] See fn 34.
[12] See fn 30.
[13] See fn 4.
[14] See fn 4.
[15] See fn 34.

was amended to permit a worker who had received workers' compensation benefits to maintain an action in tort.[16] In 1954, an apparent curative amendment of the contracting provision (last previously amended in 1943) was enacted[17] to eliminate the "or any other person" clause that would have, if literally construed, continued to bar a tort action by a worker employed by an uninsured subcontractor against any person, including the contractor as an "other person". By so striking the "or any other person" clause, the Legislature eliminated the contractor's exculpation from tort liability under the *contracting provision* and evidenced a purpose and intent that a worker injured in the employ of an uninsured subcontractor, like all other injured workers, could both claim workers' compensation benefits and sue in tort.

The purpose of the 1952 and 1954 legislation—to secure to the injured worker the benefit of a recovery obtainable in tort to the extent it may exceed workers' compensation benefits—is not served by a construction of the act that transforms the nature of the *exclusive remedy provision,* relied on in *Drewes* and in the majority opinion as the operative provision for exculpating the contractor from tort liability, so that it became for the first time (in 1952 and 1954) in respect to a contractor from whom workers' compensation benefits were claimed, and no other person, a trade-off for being *subjected* to workers' compensation liability.

## II

The question is one of statutory construction, and hence of legislative intent or purpose.

---

[16] See fn 30.

[17] See fn 4.

The point involved in this case could not have been in mind in 1912, when the exclusive remedy provision, relied on in the majority opinion, was enacted nine years before the contracting provision was added to the act. Nor could it have been in mind in 1921, when the "reference" clause of the contracting provision was added to the act, for that was 31 years before the 1952 amendment of the dual liability provision permitted, for the first time, a worker who had received workers' compensation benefits to maintain an action against a third-party tortfeasor.

The question is what the Legislature had in mind in 1952 when it amended the dual liability provision to permit a recipient of workers' compensation benefits to sue a third-party tortfeasor, and in 1954 when it amended the contracting provision to eliminate the "or any other person" clause that would have, if literally construed, continued to bar a tort action by a worker employed by an uninsured contractor.[18]

We should enforce the sense of what the Legislature had in mind in 1952 when it last amended the dual liability provision and in 1954 when it last amended the contracting provision, rather than a mechanical literalism alloyed by combining provisions and amendments adopted at different times and for different reasons:

—in 1912, to provide for elective workers' compensation coverage and relieving an electing employer of tort liability under the exclusive remedy provision as a trade-off for being subject to liability;[19]

---

[18] The 1969 Legislature re-enacted (1969 PA 317) without language change the exclusive remedy, dual liability, and contracting provisions of the 1912 act as last amended in 1943, 1952, and 1954, respectively; changes were made in other provisions of the act.

[19] See fns 25, 26, and 27.

—in 1921, to establish the liability of a contractor who had elected coverage under the act to pay workers' compensation benefits to an employee of a subcontractor who had not elected coverage;[20]

—in 1943, to eliminate elective workers' compensation coverage and make coverage mandatory, with a corresponding amendment of the contracting provision to impose liability on a contractor for the payment of workers' compensation benefits when the subcontractor is uninsured;[21]

—in 1952, to eliminate the election of remedies under the 1912 dual liability provision, which had required a worker to choose after injury between seeking workers' compensation benefits or a tort recovery, and thus to permit for the first time the recipient of workers' compensation benefits to maintain an action seeking a larger amount from a third-party tortfeasor;[22]

—in 1954, to assure that the benefit of the 1952 amendment was extended to a worker injured in the employ of an uninsured subcontractor by eliminating the "or any other person" clause of the 1921 contracting provision, which, complementary of the dual liability provision, had exculpated from tort liability all persons, including the contractor, from tort liability if the worker chose after injury to receive workers' compensation benefits from the contractor.[23]

Language enacted at one time may not be reconsidered when subsequent amendatory legislation is before the Legislature. There is need to look to the purpose of the legislation and the compatibility of the result with the legislative purpose. Where a strict application of a definition enacted in another context would work a result not consonant with the legislative purpose, a court construes the defined term so as to ascribe a meaning consistent with the

---

[20] See fn 4.
[21] See fn 34.
[22] See fn 30.
[23] See fn 4.

purpose although a literal application of the defined
term would lead to a different result.[24]

---

[24] Generally, a statutory definition of a word or phrase applies to
the word or phrase wherever it occurs in the statute. Such a defini-
tion will not, however, be rigidly applied where obvious incongruities
in the statute would result, a purpose of the legislation would be
defeated, the result reached by strictly applying the statutory defini-
tion would be aberrant, or it is evident that the Legislature did not
intend the definition to apply to every use of the word or term
throughout the statute or ordinance. See *Lawson v Suwannee Fruit &
Steamship Co*, 336 US 198; 69 S Ct 503; 93 L Ed 611 (1949); *Iowa Beef
Processors, Inc v Miller*, 312 NW2d 530, 533 (Iowa, 1981); *Gilbert v
Indiana*, 411 NE2d 155, 157 (Ind App, 1980); *Missouri ex rel Housing
Authority of St Louis County v Wind*, 337 SW2d 554, 560-561 (Mo
App, 1960). *Cf. Habecker v Nationwide Ins Co*, 299 Pa Super 463, 472;
445 A2d 1222 (1982) (where the state statute explicitly provided that
a statutory definition would not apply where a contrary intention
plainly appeared); *Stone v Hodges*, 435 P2d 165, 166 (Okla, 1967)
(same); *South Dakota v Howell*, 77 SD 518, 523; 95 NW2d 36 (1959)
(same, but suggesting the principle as a general rule of statutory
construction).

In *Lawson, supra*, p 201, the United States Supreme Court con-
strued a federal workers' compensation act and said:

"Statutory definitions control the meaning of statutory words, of
course, in the usual case. But this is an unusual case. If we read the
definition[s] * * * in a mechanical fashion, we create obvious incon-
gruities in the language, and we destroy one of the major purposes of
the second injury provision: the prevention of employer discrimina-
tion against handicapped workers. We have concluded that Congress
would not have intended such a result."

In *Iowa Beef Processors, Inc, supra*, p 533, the Iowa Supreme Court
construed the Iowa workers' compensation act and said:

"An isolated, literal reading of the definitional clause would provide
coverage based upon domicile alone, if the employer has a business in
any state. We have often said that the legislature may be its own
lexicographer, and that we are bound to follow its definitions, * * *
and may not add words or change terms under the guise of judicial
construction. * * * 'If, however, the definitions are arbitrary and
result in unreasonable classifications or are uncertain, then the court
is not bound by the definitions.' 1A C. Sands, *Statutes and Statutory
Construction*, § 20.08, p 59 (4th ed, 1972). Defining employment that
'is principally localized in this state' to allow benefits to be based
exclusively upon the domicile of the employee, with no part of the
employment relationship either originating or performed in Iowa
would, in our opinion, be arbitrary."

The Supreme Court of Indiana declared in *Gilbert, supra*, p 157,
that, "in construing statutes, an appellate court is bound by the
definitions set forth in the particular act, unless those definitions are
inconsistent or repugnant to the legislative intent".

The Missouri Court of Appeals explained this doctrine of statutory
construction in *Wind, supra*, p 560:

We are obliged, bearing in mind that the 1921, 1943, 1952, and 1954 amendments incorporate different policies, and that the language of those amendments was chosen to implement those policies, to seek to enforce the legislative purposes not only of the 1921 and 1943 Legislatures, but also of the 1952 and 1954 Legislatures.

## A

We first consider the exclusive remedy provision,[25] relied on in the majority opinion to exculpate the contractor from tort liability.

"[I]t is the general rule that when a legislative body enacts a statute or ordinance which prescribes the meaning to be given to particular words or terms used by it, such meaning is binding on the courts even though at variance with the common and ordinary understanding of the rules or terms. * * * Like most rules, however, this one is not without its exceptions. * * * [C]ourt[s] [are] not bound to follow the statutory definition where obvious incongruities in the statute would thereby be created, nor where one of the major purposes of the legislation would be defeated or destroyed. Nor is a court required to adhere to the statutory meaning if the result reached would be absurd. * * * And lastly, a court is not bound by the statutory definition if it is evidenced from the enactment that the legislative body did not intend the definition to apply to every use of the word or term throughout the statute or ordinance."

See also *Markham v Cabell,* 326 US 404; 66 S Ct 193; 90 L Ed 165 (1945), where the Court declared that a statute should be applied in all situations in which the legislature intended that it be applied even though a strict reading of one of the statute's many provisions would have limited the statute's application to a single situation.

[25] The exclusive remedy provision as originally enacted in 1912 read:

"Sec. 4. Any employer who has elected, with the approval of the industrial accident board hereinafter created, to pay compensation as hereinafter provided, shall not be subject to the provisions of section one; nor shall such employer be subject to any other liability whatsoever, save as herein provided for the death of or personal injury to any employe, for which death or injury compensation is recoverable under this act, except as to employes who have elected in the manner hereinafter provided not to become subject to the provisions of this act." 1912 (1st Ex Sess) PA 10, part I, § 4.

This provision was amended in 1943, when workers' compensation coverage was made mandatory, to read:

"Sec. 4. Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, shall be the exclusive remedy against the employer." 1943 PA 245, part I, § 4.

This provision was amended in 1969 to read:

"Where the conditions of liability under this act exist, the right to

The original 1912 workers' compensation act put both the employer[26] and the employee[27] to an elec-

the recovery of compensation benefits as provided in this act shall be the exclusive remedy against the employer." 1969 PA 317, § 131, MCL 418.131; MSA 17.237(131).

This provision was last amended in 1972 to read:

"The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 'employee' includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and 'employer' includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract." 1972 PA 285, § 131, MCL 418.131; MSA 17.237(131).

[26] When the workers' compensation act was enacted in 1912, coverage was elective. Both the employer (see below) and the employee (fn 27) could choose whether to participate in the reparations program provided by the act. If the employer chose to participate, the employee had the legal right, although he may not have had the economic freedom to exercise that right, to decline coverage when he was hired. If the employee elected out, he could maintain an action in tort against his employer. If the employee did not elect out, his exclusive remedy against his employer who had elected coverage was to seek workers' compensation benefits; he could not after injury elect to sue his employer in tort because the exclusive remedy provision was a trade-off for the employer being subject to liability.

The employer election as originally enacted in 1912 read:  .

"Sec. 5. The following shall constitute employers subject to the provisions of this act:

"1. The State and each county, city, township, incorporated village and school district therein;

"2. Every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written, and who, at or prior to the time of the accident to the employe for which compensation under this act may be claimed, shall in the manner provided in the next section, have elected to become subject to the provisions of this act, and who shall not, prior to such accident, have effected a withdrawal of such election, in the manner provided in the next section." 1912 (1st Ex Sess) PA 10, part I, § 5.

This election was eliminated in 1943 when coverage was made mandatory. See fn 35.

[27] The employee election as originally enacted in 1912 read:

"Sec. 8. Any employe as defined in subdivision one of the preceding section shall be subject to the provisions of this act and of any act amendatory thereof. Any employe as defined in subdivision two of the preceding section shall be deemed to have accepted and shall be

tion of remedies *before injury* whether to provide or accept coverage under the act as a substitute for tort liability. The purpose and intent of the exclusive remedy provision, part of the act from its inception although it did not take its present form until 1943 when workers' compensation coverage was made mandatory, is to relieve an employer, unconditionally subject to the obligation to pay workers' compensation benefits,[28] of tort liability without regard to whether the injured worker claims or accepts workers' compensation benefits after injury. The "exclusive remedy" provision was then, as it is now, a trade-off for the employer being *subject* to liability under the act, not for being *subjected* to liability.

It was thus not part of the legislative purpose or intent—in 1912 in enacting, and in 1943 in re-enacting, the *exclusive remedy provision*—for that provision to become operative as the result of an

---

subject to the provisions of this act and of any act amendatory thereof if, at the time of the accident upon which liability is claimed:

"1. The employer charged with such liability is subject to the provisions of this act, whether the employe has actual notice thereof or not; and

"2. Such employe shall not, at the time of entering into his contract of hire, express or implied, with such employer, have given to his employer notice in writing that he elects not to be subject to the provisions of this act; or, in the event that such contract of hire was made before such employer became subject to the provisions of this act, such employe shall have given to his employer notice in writing that he elects not to be subject to such provisions, or without giving either of such notices shall have remained in the service of such employer for thirty days after the employer has filed with said board an election to be subject to the terms of this act. An employe who has given notice to his employer in writing as aforesaid that he elects not to be subject to the provisions of this act, may waive such claim by a notice in writing, which shall take effect five days after it is delivered to the employer or his agent." 1912 (1st Ex Sess) PA 10, part I, § 8.

This election was eliminated in 1943 when coverage was made mandatory. See fn 35.

[28] Under the original 1912 act, for being subject to liability because the employer had elected coverage and the employee had not elected out (see fns 26 and 27); after 1943, for being subject to liability because coverage thereafter was mandatory (see fn 35).

election of remedies by the injured worker after injury. It follows that the policy of the exclusive remedy provision of providing a trade-off for being subject to workers' compensation liability does not extend to a contractor who *is* generally subject to tort liability to an employee of a subcontractor and who is *not* generally subject to workers' compensation liability to such an employee, but who may be *subjected* to workers' compensation liability to such an employee only if the subcontractor failed to insure or otherwise secure the payment of workers' compensation benefits and the employee seeks benefits from the contractor after injury.[29]

## B

As originally enacted in 1912 and until 1952, the act provided a second election for a worker who, although covered by the act (because his employer and he had both elected coverage), also had a tort claim against a person other than his employer. Under the dual liability provision of the act, the worker could elect, after injury, either to sue the tortfeasor or to claim workers' compensation benefits from his employer. If the worker claimed workers' compensation benefits after injury, he waived his right to sue all third persons in tort. The employer then was subrogated to the worker's tort claim and could sue the tortfeasor to recover workers' compensation benefits paid the worker.[30]

---

[29] See fn 4.

[30] The dual liability provision as originally enacted in 1912 read:

"Sec. 15. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the Commis-

sioner of Insurance, as the case may be, the liability of such other person." 1912 (1st Ex Sess) PA 10, part III, § 15.

In 1952, the dual liability provision was amended to provide a worker with the best of both alternatives. The worker could maintain a tort action except against his employer, even though he had sought or obtained workers' compensation benefits from his employer. In continuation of the concept of the original (1912) dual liability provision above set forth, the dual liability provision as amended in 1952 continued to subrogate the employer to the injured worker's tort claim. The amended dual liability provision states that a tort recovery shall be used "first [to] reimburse the employer" or his insurer for workers' compensation benefits paid or payable, and that the balance (paid to the worker or his dependents) "shall be treated as an advance payment by the employer on account of any future payment of compensation benefits".

The dual liability provision, as amended in 1952, read:

"Sec. 15. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address, the workmen's compensation commission, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

"Prior to the entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

"Such settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against said third party for any interest or claim it might have.

"In the event the injured employee or his dependents or personal representative shall settle their claim for injury or death, or commence proceeding thereon against the third party before the payment of workmen's compensation, such recovery or commencement of proceedings shall not act as an election of remedies and any moneys so recovered shall be applied as herein provided.

A purpose and intent of the dual liability provision, as originally enacted and until 1952, was thus to put the injured worker to an election of remedies after injury. An injured worker who sought workers' compensation benefits rather than sue a tortfeasor did not thereby immunize the employer from tort liability in return for subjecting the employer to the obligation to pay benefits. The employer was relieved of tort liability to a worker when the employer had elected to become subject to the provisions of the act and the worker had failed, when he was hired, to elect not to be subject to the provisions of the act. By accepting workers' compensation benefits, the worker instead, under the dual liability provision, immunized all persons other than the employer from tort liability.

---

"In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

"Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery.

"Compensation benefits referred to in this section shall in each instance include but not be limited to all expenses incurred under sections 4 and 8 of part 2 of this act, being sections 412.4 and 412.8 of the Compiled Laws of 1948." 1952 PA 155.

The dual liability provision as amended in 1952 was re-enacted as § 827 of 1969 PA 317, with stylistic changes. There were no substantive changes, however, and the relevant language discussed in this opinion was unchanged. An additional paragraph was added to § 827 by 1972 PA 285 concerning the "furnishing of, or failure to furnish, safety inspections or safety advisory services".

C

The "reference to the principal [contractor]" clause of the contracting provision enacted in 1921 was not designed or intended, in combination with the exclusive remedy provision relied on in *Drewes* and in the majority opinion as the operative language, to provide an election of remedies or to exculpate the contractor from tort liability:

(i) the exclusive remedy provision was intended to and operates to insulate an employer generally subject to liability for workers' compensation benefits from tort liability independently of employee election after injury, and

(ii) under the dual liability provision, and the complementary "or any other person" clause enacted by the 1921 Legislature as part of the contracting provision from its inception, no person was subject to tort liability if the worker elected to receive workers' compensation benefits after injury.

A worker injured in the employ of an uninsured subcontractor can maintain an action in tort against the contractor, at least where he has not accepted workers' compensation benefits from the contractor.[31] The contractor is not insulated from such an action by an employee of a subcontractor, insured or uninsured, on the rationale that the contractor may, if the subcontractor fails to secure the payment of workers' compensation benefits, be subjected by the employee to liability to pay workers' compensation benefits.

When the contracting provision, with the "reference to the principal [contractor]" clause,[32] was added in 1921, *that* clause could not, in combina-

[31] See fns 4 and 46 and text following fn 47.
[32] See fn 4.

tion with the exclusive remedy provision, have deprived an employee of a subcontractor of the right to maintain an action against a contractor who paid workers' compensation benefits that the subcontractor did not provide, because under the dual liability provision and the complementary "or any other person" clause of the contracting provision[33] an employee of a subcontractor could not have accepted workers' compensation benefits from the contractor and then sued in tort.

The 1921 legislation adding the contracting provision could not embody a separate purpose to exculpate, under the exclusive remedy provision, a contractor who pays workers' compensation benefits his subcontractor did not provide, from liability in a tort action that could not then be maintained against the contractor or anyone else where workers' compensation benefits were paid. The 1921 legislative purpose did not become enlarged when, as a result of the 1952 and 1954 amendments, the contractor would no longer be exculpated from tort liability under the dual liability or the "or any other person" clause where the worker after injury claimed workers' compensation benefits from the contractor.

The purpose and intent of the contracting provision, added in 1921, was to define the scope of the contractor's obligations and of an injured worker's rights respecting workers' compensation benefits where the contractor had elected and the subcontractor had not elected to provide workers' compensation benefits. It was not part of the legislative purpose or intent of the 1921 legislation to provide that the *exclusive remedy provision*—that in 1921 could only become operative if the worker had not elected *at the time of hiring* not to become

---

[33] See fn 4.

subject to the provisions of the act[34]—would become operative upon an election of remedies by the worker *after injury.* In this connection it is noteworthy that where a subcontractor had not elected to become subject to the provisions of the act—and the 1921 contracting provision only applied in such a case—an employee of a subcontractor never had an opportunity to elect whether to become subject to the provisions of the act, a precondition in 1921 for the exclusive remedy provision to become operative.

### D

In 1943, the act was amended to eliminate employer and employee elections whether to be covered by the act, and thus to make workers' compensation coverage mandatory.[35] The contractor's

---

[34] An action against the contractor would not have been barred under the exclusive remedy provision as enacted in 1912 because, until workers' compensation coverage became mandatory in 1943, the exclusive remedy provision only became operative when the employer's liability to pay workers' compensation benefits to a worker arose by reason of the employer's election to be subject to the provisions of the act and the employee's failure to elect not to be subject to its provisions. See fns 26 and 27.

[35] In 1943, workers' compensation coverage became mandatory, and the contracting provision was restated to require the contractor to pay workers' compensation benefits when the subcontractor failed to obtain insurance or otherwise secure payment of benefits. No change was made in the dual liability provision or in the complementary "or any other person" clause of the contracting provision. As before the 1943 amendment, if an injured employee of an insured or uninsured subcontractor had a tort claim, he could sue the contractor or anyone else in tort, but only in lieu of seeking workers' compensation benefits.

The language eliminating elective coverage, added in 1943, reads:

"Sec. 2. On and after the effective date of this section, every employer, public and private, and every employe, unless herein otherwise specifically provided, shall be subject to the provisions of this act and shall be bound thereby. The commission may in its discretion destroy any record, file or paper pertaining to workmen's compensation where, or whenever, 20 or more years have elapsed since the date of the injury to which the record, file or paper refers."

obligation under the contracting provision was restated to include the obligation to pay workers' compensation benefits if the subcontractor failed to insure or otherwise secure their payment.[36] The worker's election under the "dual liability" provision (and the complementary "or any other person" clause of the contracting provision), to sue a third-party tortfeasor or to claim workers' compensation benefits was not changed.[37]

Although workers' compensation coverage was now mandatory, a worker in the employ of a subcontractor, insured or uninsured, could (as before the 1943 amendment) after injury sue the contractor in tort—although he could not sue an actual employer—in lieu of claiming workers' compensation benefits.[38] The liability of a contractor to an injured employee of an insured or uninsured subcontractor was *not* limited to the payment of workers' compensation benefits on the rationale that the contractor was *subject* to liability as an "employer" if the subcontractor failed to provide security for the payment of benefits and the exclusive remedy against a person subject to liability as an "employer" is the right to seek workers' compensation benefits.

The exclusive remedy provision was thus not the determinative provision after coverage became mandatory in 1943; the determinative provisions continued to be the dual liability provision and the complementary "or any other person" clause in the contracting provision, which provided all injured workers, including those injured in the employ of an insured or uninsured subcontractor, a choice of seeking workers' compensation benefits

---

[36] See fn 4.

[37] See fn 30.

[38] See fn 4.

or of suing any person other than an actual employer (who alone was already exculpated by the exclusive remedy provision) and which exculpated all persons from tort liability when the worker chose after injury to seek workers' compensation benefits.

## E

In 1952, the act was amended to eliminate the election of remedies under the dual liability provision so that an injured worker could accept workers' compensation benefits without giving up any larger amount recoverable in tort from a third-party tortfeasor.[39] For the first time, it became important whether the worker could sue in tort a contractor who had paid the workers' compensation benefits that an uninsured subcontractor had failed to provide.

In 1954, an apparent curative amendment of the contracting provision (last amended in 1943) was enacted to eliminate the "or any other person" clause,[40] which, complementing the pre-1952 dual liability provision, barred a tort action against "any other person" if the employee claimed workers' compensation benefits and would, if literally construed, have continued to bar after 1952 a tort action against the contractor if the worker had after injury sought from the contractor workers' compensation benefits that an uninsured subcontractor had failed to provide. The Legislature thereby evidenced a purpose and intent that a worker injured in the employ of an uninsured subcontractor, like all other injured workers, could

[39] See fn 30.
[40] See fn 4.

both claim workers' compensation benefits and sue in tort.

## III

The Legislature thus has moved, in 1943, 1952, and 1954, to eliminate the provisions of the original 1912 act providing employers and employees with elections of remedies.[41]

Today's decision that a contractor is relieved of tort liability if he pays workers' compensation benefits that a subcontractor failed to provide reintroduces into the act the concept of election of remedies eliminated by the 1943, 1952, and 1954 amendments.[42] It constitutes for the first time in 1952 or 1954, the exclusive remedy provision, enacted in 1912,[43] a trade-off not for being *subject* to liability but for being *subjected* to liability.

The construction of the act set forth in the majority opinion is not consonant with the structure of the act or the apparent purpose of the 1943, 1952, and 1954 Legislatures to eliminate provisions of the act putting an employer or an employee to an election of remedies, and is violative of the clear purpose of the 1954 amendment of

---

[41] The election of remedies provisions (i) in 1912 and 1921, were the provisions of the act that, until coverage became mandatory in 1943, gave an employer the right to elect coverage (fn 26) and the employee the right to elect out (fn 27), and that made the remedy provided by the act the exclusive remedy if the employer elected coverage and the employee did not elect out (fn 25), (ii) that, until 1952, gave an employee, after injury, an election under the dual liability provision either to accept workers' compensation benefits from his employer (if, until 1943, the employer had elected coverage), or to sue in tort anyone other than the employer (fn 30), and (iii) that, until the curative amendment in 1954, provided that an employee of a subcontractor who sought workers' compensation benefits from the contractor when the subcontractor failed to provide them also waived his right to sue "any other person" in tort (fn 4).

[42] See fns 4 and 46 and text following fn 47.

[43] See fn 25.

the contracting provision to extend the benefit of the 1952 amendment of the dual liability provision to a worker injured in the employ of an uninsured subcontractor who obtains workers' compensation benefits from the contractor, by allowing him to maintain an action in tort against an "other person", who then, as in 1921 and 1943, included the contractor.

The purpose of the 1952 amendment of the dual liability provision was to secure to the injured worker the benefit of a recovery obtainable in tort to the extent it may exceed workers' compensation benefits. The only purpose of the 1954 amendment of the contracting provision was to secure the benefit of the 1952 amendment of the dual liability provision to a worker injured in the employ of an uninsured subcontractor.

The construction placed on the act in the majority opinion deprives a worker injured in the employ of an uninsured subcontractor *and no other injured worker* of the benefit of a greater recovery obtainable in a tort action and is not consistent with the purpose of the 1952 and 1954 amendments.

## IV

It appears that in a majority of jurisdictions a contractor is regarded as, or is deemed to be, the employer of an employee of a subcontractor, and on that rationale is not subject to tort liability to such an employee even if the subcontractor or his insurer pays workers' compensation benefits.[44] Where that is the rule it is held, as one would expect, that the contractor, *not* subject to tort liability if the subcontractor or his insurer pays

---

[44] 2A Larson, Workmen's Compensation, § 72.31(a), p 14-111 ff.

workers' compensation benefits, does not become subject to tort liability if the subcontractor or his insurer does not pay the benefits and the contractor pays them.[45]

---

[45] It appears that of the fifteen states other than Michigan cited in Larson, fn 44 *supra,* § 72.31(a) and fn 47, eight (Colorado, Georgia, Kansas, Louisiana, Maryland, Missouri, Oklahoma, and Pennsylvania) are also cited as holding the contractor immune from tort liability when the subcontractor is insured or pays the workers' compensation benefits. See *id.,* § 72.31(b) and fns 49 and 50. An analysis of the decisions cited from the remaining seven jurisdictions (Utah, Nevada, Kentucky, Virginia, Alaska, New York, and Mississippi) indicates that either those jurisdictions also have so held, or would so hold, or that the cases cited are not in point.

In *Adamson v Okland Construction Co,* 29 Utah 2d 286; 508 P2d 805 (1973), the subcontractor paid workers' compensation benefits, and the contractor was held to be immune from tort liability.

In *Ortolano v Las Vegas Convention Service,* 96 Nev 308; 608 P2d 1103 (1980), where the benefits were paid by the worker's "immediate employer", the convention service was held to be immune.

In *Whittenberg Engineering & Construction Co v Liberty Mutual Ins Co,* 390 SW2d 877, 882 (Ky, 1965), the court ruled that the contractor could be required to indemnify the subcontractor's insurer, who had paid the workers' compensation benefits. The court stated that a contractor was immune from a common-law tort action by an injured employee of a subcontractor, even if the subcontractor or his insurer had paid benefits. In *United Engineers & Constructors, Inc v Branham,* 550 SW2d 540 (Ky, 1977), the contractor was held immune from tort liability where the insurer of the subcontractor had paid benefits to an injured employee.

In *Evans v Newport News Shipbuilding & Dry Dock Co,* 243 F Supp 1017 (ED Va, 1965), aff'd 361 F2d 364 (CA 4, 1966), the court ruled that the Virginia workers' compensation act barred an action against the owner of a project by an employee of a contractor who had received workers' compensation benefits from the insurer of the contractor.

In *Sloan v Atlantic Richfield Co,* 552 P2d 157, 160 (Alas, 1976), the court held that an employee of an independent contractor does not have a cause of action against an owner or possessor of the premises whereon the injury occurred. The case was decided on common-law, not statutory, grounds. But see *Miller v Northside Danzi Construction Co,* 629 P2d 1389 (Alas, 1981), fn 48 *infra.*

It is unclear who paid the benefits in *Washington v East 87th & 88th Street Contracting Co,* 90 Misc 2d 911; 396 NYS2d 596 (1977). In all events the rule in New York is stated in *Sweezey v Arc Electrical Construction Co, Inc,* 295 NY 306; 67 NE2d 369 (1946), where the New York Court of Appeals held that the contractor was liable in tort although it was obligated to pay the benefits because the subcontractor had failed to secure compensation insurance.

In one jurisdiction, Georgia, the contractor was held, by the state's

The rule in Michigan, however, is that the contractor is generally subject to tort liability to an employee of a subcontractor, and therefore a tort action may be maintained against the contractor by a person injured in the employ of a subcontractor, at least where the subcontractor has provided for the payment of workers' compensation benefits.[46] It is indeed arguable, as Professor Larson urges, that the corollary of the contractor's contingent liability to pay workers' compensation benefits should be exculpation from tort liability to employees of all subcontractors, insured and uninsured.[47] But, in light of the legislative decision to

intermediate appellate court, to be immune from tort liability after it had been required to pay benefits because its subcontractor was not insured, although a contractor would be subject to tort liability if an insured subcontractor paid benefits. See *Jackson v J B Rush Construction Co, Inc,* 134 Ga App 445; 214 SE2d 710 (1975). Subsequently, however, the Supreme Court of Georgia held that the contractor was immune from tort liability even when the subcontractor paid the benefits, reasoning that if a contractor was immune when he was required to pay benefits, he also should be immune when the subcontractor was insured and paid benefits. See *Wright Associates, Inc v Rieder,* 247 Ga 496; 277 SE2d 41 (1981); *Cleckley v Batson-Cook Co,* 160 Ga App 831; 288 SE2d 573 (1982). Mississippi employed much the same analysis to reach the same conclusion. See *Doubleday v Boyd Construction Co,* 418 So 2d 823 (Miss, 1982), discussed in fn 52.

Opinions from other courts may be read as suggesting that a contractor may become immune when he is required to pay benefits. See *Thomas v Farnsworth Chambers Co,* 286 F2d 270, 273 (CA 10, 1960), *Ryan v New Bedford Cordage Co,* 421 F Supp 794 (D Vt, 1976), *Bence v Pacific Power & Light Co,* 631 P2d 13 (Wy, 1981), and *Fonseca v Pacific Construction Co, Ltd,* 513 P2d 156 (Hawaii, 1973). See also *Young v Environmental Air Products, Inc,* 136 Ariz 158, 162, fns 5, 6; 665 P2d 40 (1983) *(en banc),* and *Word v Motorola, Inc,* 135 Ariz 517, 518, fn 3; 662 P2d 1024 (1983) *(en banc).*

[46] See *Schulte v American Box Board Co,* 358 Mich 21; 99 NW2d 367 (1959). See also *Funk v General Motors Corp,* 392 Mich 91, 111-112; 220 NW2d 641 (1974). See also text following fn 47.

[47] Professor Larson's argument that the contractor should always be immune from tort liability is based on his view of sound public policy rather than a construction of the Michigan statute. He states a defensible point of view. The contractor, and the owner who employs the contractor, ultimately bears the cost of workers' compensation insurance when the subcontractor is insured. The subcontractor presumably adds the cost of such insurance when he submits his bid or

make the contracting provision operative only when the subcontractor is not insured, and thus not to free a contractor from tort liability to employees of all subcontractors, insured and uninsured, a change in the Michigan rules can appropriately be ordained only by the Legislature.

We have found decisions in eight jurisdictions where, as in Michigan, a contractor is generally subject to tort liability to an employee of a subcontractor, that address the question whether a contractor so generally subject to tort liability remains subject to tort liability if he is required to pay workers' compensation benefits when the subcontractor fails to provide benefits. Decisions in six of the eight jurisdictions hold that the contractor continues to be subject to tort liability although he was required to pay workers' compensation benefits.[48]

---

otherwise is hired by the contractor. See *Griffin v United States,* 644 F2d 846, 848 (CA 10, 1981); *Musick v Puerto Rico Telephone Co,* 357 F2d 603, 605 (CA 1, 1966); *Watkins v United States,* 479 F Supp 785, 789 (D SC, 1979); *Bence v Pacific Power & Light Co,* 631 P2d 13, 15, fn 1 (Wy, 1981). But see *DiNicola v George Hyman Construction Co,* 407 A2d 670, 674-675 (DC App, 1979). It thus may be sound public policy to treat the contractor/owner and the subcontractor as a single enterprise for purposes of workers' compensation and third-party tort liability, but that is not the rule in Michigan.

[48] See *Kilgore v C G Canter, Jr & Associates, Inc,* 396 So 2d 60 (Ala, 1981); *Miller v Northside Danzi Construction Co,* 629 P2d 1389 (Alas, 1981); *Prive v M W Goodell Construction Co, Inc,* 119 NH 914; 409 A2d 1149 (1979); *Laffoon v Bell & Zoller Coal Co,* 65 Ill 2d 437; 359 NE2d 125 (1977); *Sweezey v Arc Electrical Construction Co, Inc,* 295 NY 306; 67 NE2d 369 (1946) (The opinion is unclear whether the contractor in fact had paid the benefits; the court declared, however, that a general contractor remains liable in tort although obligated to pay compensation benefits to an injured employee of an uninsured subcontractor.); *Culbertson v Kieckhefer Container Co,* 197 Wis 349; 222 NW 249 (1928) (dicta).

In two jurisdictions, the District of Columbia and Arkansas, the contractor is subject to tort liability when an insured subcontractor pays the benefits, but is immune from tort liability when the subcontractor is not insured and the contractor is required to pay benefits. See *Clanagan v Washington Metropolitan Area Transit Authority,* 558 F Supp 209 (D DC, 1982); *Carter v Fraser Construction Co,* 219 F

The extent of a contractor's liability for workers' compensation benefits and exculpation from tort liability are essentially matters of policy to be decided by the Legislature. We are obliged to reach a result that serves the legislative policy.

We are persuaded that if one begins with the established premise that, in this state, the contractor is generally subject to tort liability to an employee of a subcontractor, it better serves the legislative policy embodied in the 1952 and 1954 amendments for the contractor not to be advantaged and the worker disadvantaged because the subcontractor, in violation of the act, is uninsured. A contractor can protect himself from being called upon to pay workers' compensation benefits to an employee of an uninsured subcontractor by requiring the subcontractor, at the time the subcontractor enters into an agreement with the contractor, to provide continuing evidence that the subcontractor is insured for workers' compensation liability.[49]

Holding the contractor to both tort and workers' compensation liability provides a worker injured in the employ of an uninsured subcontractor no more than the opportunity, along with all other injured workers, to pursue a greater tort recovery. The contractor is protected by the subrogation feature of the dual liability provision from being

Supp 650 (WD Ark, 1963); *Baldwin Co v Maner*, 224 Ark 348; 273 SW2d 28 (1954). The District of Columbia workers' compensation act construed in *Clanagan* is the same (see *Clanagan, supra*, p 210, fn 1; DC Code § 36-501) as the Federal Longshoremen's and Harbor Workers' Compensation Act (33 USC 904[a]-905[a]). At least one court that has construed that federal act has concluded, however, that a contractor remains liable in tort after having paid the benefits to an injured employee of an uninsured subcontractor. See *Fiore v Royal Painting Co, Inc*, 398 So 2d 863 (Fla App, 1981).

[49] The policy might be endorsed to show the contractor as an additional insured and to require that notice of cancellation be sent to the contractor as well as the subcontractor.

required to pay twice. Whatever verdict might be returned against the contractor in a tort action must be reduced by the amount the contractor has paid as workers' compensation benefits, and the balance of a tort recovery (paid to the worker) is deemed to be an advance payment of any further workers' compensation benefits that the worker otherwise could claim from the contractor.[50] The act further provides that the contractor may seek to recover the amount paid as workers' compensation benefits in an action against the subcontractor.[51]

The contracting provision, as enacted in 1921, precluded a contractor who had elected to become subject to the provisions of the act from avoiding the obligation so assumed by subcontracting with a subcontractor who had not elected to subject himself to the provisions of the act work to be performed by the contractor. The contracting provision, as amended in 1943, bars a contractor from avoiding mandatory workers' compensation liability by dealing with an uninsured subcontractor. It would not be consonant with the policy implicit in those legislative decisions to permit a contractor to avoid the tort liability, to which he is otherwise subject under the Michigan rule, by dealing with an uninsured subcontractor.[52]

---

[50] See fn 30.

[51] See fn 4.

[52] Georgia and Mississippi have explicitly construed their workers' compensation acts so as to make *all* contractors equally liable. See *Wright Associates, Inc v Rieder,* 247 Ga 496; 277 SE2d 41 (1981); *Doubleday v Boyd Construction Co,* 418 So 2d 823 (Miss, 1982).

The Mississippi Supreme Court first held that a contractor who had hired an uninsured subcontractor should be immune when it was required to pay workers' compensation benefits to the subcontractor's injured employee. See *Mosley v Jones,* 224 Miss 725; 80 So 2d 819 (1955). The court then held that a contractor should also be immune when he had required his subcontractor to buy insurance and pay benefits to his own injured employees. The court reasoned that by

The contractor's responsibility under the contracting provision arises without regard to whether he purposefully sought to deal with a subcontractor who had not elected coverage or is not insured. Similarly, it is not a question whether the contractor, or how many contractors, would purposefully deal with an uninsured subcontractor and thereby run the risk of paying workers' compensation benefits to employees of the subcontractor. Whether the contractor acted purposefully is not, for purposes of the contracting provisions, relevant. The same policy that requires a contractor to pay workers' compensation benefits to an injured employee of an uninsured subcontractor, without regard to whether the contractor purpose-

---

requiring the subcontractor to buy insurance the contractor had "secured" the payment of benefits to the employee and therefore was immune under the Mississippi act. *Doubleday v Boyd Construction Co, supra.* The court wrote that

"the obvious purpose of the statute is for the protection of employees of subcontractors who do not carry workmen's compensation insurance. It would be paradoxical however, in our opinion, to hold * * * that a general contractor risk *[sic]* personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums provided by the act. We do not think the legislature intended such an improbable result." *Id.,* p 826.

See also *Nations v Sun Oil Co (Delaware),* 695 F2d 933 (CA 5, 1983) (applying *Doubleday* to hold the contractor immune after the insured subcontractor paid the benefits).

In *Laffoon v Bell & Zoller Coal Co,* 65 Ill 2d 437; 359 NE2d 125 (1977), the court also postulated that it was necessary to treat all contractors equally but, in contrast with Georgia and Mississippi, concluded that the contractor was always subject to tort liability to the employees of a subcontractor, insured or uninsured.

When a contractor hires an insured subcontractor, the contractor presumably pays both for the subcontractor's workers' compensation insurance, through its contract with the subcontractor, and for insurance to cover its liability in tort. In jurisdictions like Michigan, where contractors remain subject to tort liability although the subcontractor is insured, contractors are treated unequally when a contractor is relieved of tort liability if the subcontractor is uninsured.

fully dealt with an uninsured subcontractor, requires that the contractor continue to be subject to the tort liability it would be subject to if it dealt with an insured subcontractor, without regard to whether it purposefully dealt with an uninsured subcontractor.

We would affirm the Court of Appeals.

Williams, C.J., and Kavanagh, J., concurred with Levin, J.